## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Debra Roschen, James Roschen, Megan
Roschen, Steve Drazkowski, Laura
Drazkowski, Kinsey Drazkowski, David
Harms, C. Merl Norman, Anna Mae
Norman, Beverly Snow, Jerry Snow,
Jerry Gelao, John Adams, Donna Adams,
Virginia Kautz, Julie Porcher,  Marlin
Graves, Karen Graves,

                    Plaintiffs,

vs.

Wabasha County; Anoka County;
Anoka County Community Corrections
and its Director Dylan Warkentin in his
individual and official capacity;
Benton County; Blue Earth County; Blue
Earth County Community Corrections
and its Director Josh Milow in his
individual and official capacity;
Chisago County; Dakota County;
Dodge County; Douglas County;
Faribault County; Goodhue County;
Hennepin County; Hennepin County
Community Corrections and its Director
Tom Merkel in his individual and official
capacity; Jackson County; Lake County;
Martin County; Mille Lacs County; Nicollet
County; Olmsted County; Ottertail County;
Ramsey County; Renville County;  St. Louis
County; Scott County; Steele County;
Washington County; Winona County; Wright
County; Mona Dohman, acting in her individual
and official capacity as Commissioner of Public
Safety; Lori Swanson, in her individual capacity
and official capacity as Attorney General
of Minnesota; Colonel Kevin Daly
in his individual capacity and official capacity as

Case No.    _____

**VERIFIED COMPLAINT**
**JURY TRIAL DEMAND**

Chief of State Patrol of Minnesota; Lucinda
Jesson in her individual and official capacity as
Commissioner of Minnesota Department of
Human Services; Tom Roy in his individual
capacity and official capacity as  Commissioner
of Minnesota Department of Corrections;  Jeff
Shorba in his individual capacity and official
capacity as State Court Administrator; City of
Austin; City of Cannon Falls; City of Chaska; City of
Cloquet; City of Deerwood; City of Duluth; City of
Eagan; City of Fairmont; City of Goodview; City of
Hastings; City of Kasson; City of Kenyon; City of
Lake City; Lakes Area Police Department; City of
Mantorville; City of Medina; City of Minneapolis;
City of Minnetonka; City of Oakdale; City of Park
Rapids; City of Plainview; City of Prior Lake; City of
Red Wing; City of Richfield ; City of Rochester; City
of Rosemount; City of Roseville; City of Sartell; City
of St. Cloud; City of St. Paul; City of Staples; City of
Stillwater; City of Wabasha; City of Waterville; City
of Wells; City of White Bear Lake; City of Winona;
Fond du Lac Police Department; Metro Transit Police
Department; John and Jane Does
(1-1000) acting in their individual capacity as
supervisors, officers, deputies, staff,
investigators, employees or agents of
law enforcement agencies sited in Minnesota;
Department of Public Safety Does (1-30)
acting in their individual capacity as officers,
supervisors, staff, employees, independent
contractors or agents of the Minnesota
Department of Public Safety; and Entity
Does (1-50) including cities, counties,
Municipalities, district courts, court services,
and other entities sited in Minnesota;

Defendants.

Plaintiffs for their Complaint state and allege, upon knowledge with respect to their

own acts and upon information and belief with respect to all other matters, as follows:

## INTRODUCTION

The claims brought in this case include federal and civil rights violations based on governmental defendants violating the federal Driver's Privacy Protection Act ("DPPA") and state common law claims for invasion of privacy.

Specifically, the governmental defendants violated the DPPA by targeting a citizen group – including elected officials Representative Steve Drazkowski, County Commissioner Deb Roschen, County Commissioner Dave Harms and former County Commissioner Merl Norman – where Wabasha County law enforcement personnel and other public employees manipulated the Minnesota Department of Public Safety's system of maintaining personal, private information of Minnesota citizens to obtain federally-protected confidential information of the members of the citizen group. The state law enforcement agencies violated federal law to obtain confidential information about the citizen group and its members.

The Wabasha County Defendants and other Defendants illegally targeted Plaintiffs' DPPA-protected records at least 600 times -- 600 "pings"[1] -- from April 18, 2003 through the filing of this complaint in 2013.

The governmental pings against the Plaintiffs have been constant. The government officials pinged the DPPA-protected records during the election campaigns of Representative Steve Drazkowski (2007, 2008, 2010, 2012), County Commissioner

---

[1] The word "ping" is appropriate because in the submariner world (Plaintiff David Harms is a retired submariner), a submarine sends out an audio "ping" to see if a target will echo the audio "ping" back. Similarly, the Wabasha County Defendants were "pinging" the DPPA-protected records of Group members to see if the information could be used criminally or politically against the Group members.

Deb Roschen (2010), County Commissioner Dave Harms (2010) and former County

Commissioner Merl Norman (2012).  Over the years, when the Plaintiffs, collectively as

a group or individually, publicly took a side against the Wabasha County government –

building a new county jail (2009-2010), negotiating union contracts (2011-2012),

changing county government and personnel (2011-2012), creating a study commission

(2012-2013), shutting down the county driver safety school (2013),  etc. --  the

government officials would ping the DPPA-protected records of Plaintiffs involved.

Third, when the Plaintiffs published a writing, such as a letter to the editor or attended a

board meeting or court hearing (2009-2013), government officials would also ping

DPPA-protected records of the certain Plaintiffs involved.

As mentioned, the above-named Plaintiffs are members of a citizen group.  The

group consists of generally concerned people who politically participate together in

Wabasha County government. First, the group encourages its members to speak out on

issues, write and publish written materials and attend county board meetings.  Second,

members of the group have  won and lost some elections.  State Representative Steve

Drazkowski, after losing a state senate race in 2006,  won the local state house seat  in

2007 (special election), 2008, 2010 and 2012.   Commissioner Deb Roschen, after being

Drazkowski's campaign manager, won a Wabasha County Board seat in 2010.

Commissioner Dave Harms won a county board seat in 2010.  Merl Norman won a

county board seat in 2008, but lost his re-election bid in 2012.  Third, the group and/or its

members have engaged in two state court civil lawsuits to stop Wabasha County

governmental illegalities.  The first action alleged that the court-appointed Wabasha

4

County Study Commission was improperly organized.  *In re: Petition of Michael E. Morath and Other Wabasha County Registered Voters to Establish the Wabasha County Government Study Commission*, Wabasha County District Court, File No. 79-CV-11-1269, *on appeal*, Minnesota Court of Appeals File No. A13-0786 (2013). The second lawsuit, filed in 2013, alleges that the Wabasha County Sherriff is operating an unauthorized Drivers Safety School resulting in the diversion of traffic violation fees owed to the state being diverted to Wabasha County.  *Association for Government Accountability*, Wabasha County District Court, File No. 79-CV-13-751 (complaint filed August 20, 2013).

The above-captioned case involves three general categories of Defendants: "Wabasha County Defendants," "State Defendants" and "Other County, Court and Municipal Defendants."   The first category of Defendants is called the "Wabasha County Defendants" which includes Wabasha County and John and Jane Does who acted in their individual capacities as supervisors, officers, deputies, staff, investigators, employees or agents of Wabasha County.  The Wabasha County Defendants, without law enforcement purpose and for political purposes, engaged in a practice of "pinging" the group members' DPPA-protected records because the group members were engaged in politics, engaged in election campaigns and filed two lawsuits -- all critical of the Wabasha County government.

The second category of Defendants are  "State Defendants" including John and Jane Does who acted in their individual capacities as supervisors, officers, deputies, staff, investigators, employees or agents of these Defendants.  At the time of the filing of this

Complaint, the facts show these Defendants also illegally accessed the above-named Plaintiffs' driver records.  But, it is unknown whether this illegality was done, as with the Wabasha County Defendants' pings, for improper political purposes.

Additionally, the Department of Public Safety maintains the state driver records allowing the other Defendants' access. The Department of Public Safety has failed in its administration so that the other Defendants have violated Plaintiffs' rights under the DPPA.

The third category of Defendants is "Other County, Court and Municipal Defendants" including Entity Does and  John and Jane Does who acted in their individual capacities as supervisors, officers, deputies, staff, investigators, employees or agents of these Defendants.  At the time of the filing of this Complaint, the facts show these Defendants also illegally accessed the above-named Plaintiffs' driver records.  But, it is unknown whether this illegality was done, as with the Wabasha County Defendants' pings, for improper political purposes.

The Defendants have shown a deliberate disregard for the DPPA rights of Plaintiffs adopting policies, customs and practices of pinging the Plaintiffs' DPPA-protected records without a law-enforcement purpose – as required by DPPA.

Moreover, high-level state public officials and state administrative departments have shown an equal indifference to federal law.  The Minnesota officials and administrative departments have created a system that is easily and frequently abused by local law enforcement officials for political purposes.  Rather than designing a better system or taking reasonable steps to prevent its abuse, these officials have done nothing,

6

willfully ignoring the widespread, pervasive violation of DPPA by those with access to the system.  Through lax policies and no enforcement of DPPA, these officials, administrative departments and governmental units have caused direct damage to the Plaintiffs.  Also, the Defendants have trampled upon the clear legislative protections of DPPA so that all citizens – particularly those that are politically active  – will now feel less secure in their privacy.

## JURISDICTIONAL STATEMENT

1.      This Court has jurisdiction under 28 US.C. §§ 1331, 1343(a)(3), the Fourth and Fourteenth Amendments to the United States Constitution, the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq. and 42 U.S.C. §§ 1983, 1988 (civil rights statutes).

2.      The aforementioned statutory and constitutional provisions confer original jurisdiction on this Court over this matter.

3.      Plaintiffs further invoke the pendent jurisdiction of this Court under 28 U.S.C. § 1367 to consider their Minnesota common law invasion of privacy claim.

4.      This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. § 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and has general legal and equitable powers.

5.      Venue is proper in this Court under 28 U.S.C. § 1391.

6.      The amount in controversy exceeds $75,000, excluding interests and costs.

## PARTIES

### Plaintiffs

7.      The Roschen Plaintiffs consist of Debra Roschen and James Roschen, married persons, and their daughter Megan Roschen. Debra Roschen is a Wabasha County Commissioner. The Roschen Plaintiffs are, and were at all times material herein, citizens of the United States and residents of the State of Minnesota.

8.      The Drazkowski Plaintiffs consist of Steve Drazkowski and Laura Drazkowski, married persons, and their daughter Kinsey Drazkowski. Steve Drazkowski is, and was at all times material herein, a citizen of the United States and resident of the State of Minnesota. Laura Drazkowski is a permanent resident of the United States and Minnesota, but a citizen of Canada.  Kinsey Drazkowski is a citizen of the United States and is currently a resident of Virginia, and, was, at material times herein, a resident of Minnesota.

9.      David Harms is, and was at all times material herein, a citizen of the United States and resident of the State of Minnesota.

10.      The Norman Plaintiffs consist of C. Merl Norman and Anna Mae Norman, married persons.  The Norman Plaintiffs are, and were at all times material herein, citizens of the United States and residents of the State of Minnesota.

11.      The Snow Plaintiffs consist of Beverly Snow and Jerry Snow, married persons. The Snow Plaintiffs are, and were at all times material herein, citizens of the United States and residents of the State of Minnesota.

12.     Jerry Gelao is, and was at all times material herein, a citizen of the United States and resident of the State of Minnesota.

13.     The Adams Plaintiffs consist of John Adams and Donna Adams, married persons. The Adams Plaintiffs are citizens of the United States and residents of the State of Iowa, and, were at material times herein, residents of Minnesota.

14.     Virginia Kautz is, and was at all times material herein, a citizen of the United States and resident of the State of Minnesota.

15.     Julie Porcher is, and was at all times material herein, a citizen of the United States and resident of the State of Minnesota.

16.      The Graves Plaintiffs consist of Marlin Graves and Karen Graves, married persons. The Graves Plaintiffs are, and were at all times material herein, citizens of the United States and residents of the State of Minnesota.

### Defendants

17.     Wabasha County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.  Wabasha County has its own criminal probation department.

18.     Anoka County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

19.     Anoka County Community Corrections is an agency sited in Anoka County, which can be sued under Minn. Stat. § 466.01, et seq.  Dylan Warkentin is its Director.

20.     Benton County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

21.     Blue Earth County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

22.     Blue Earth County Community Corrections is an agency sited in Blue Earth County, which can be sued under Minn. Stat. § 466.01, et seq.  Josh Milow is its Director.

23.     Chisago County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

24.     Dakota County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

25.     Dodge County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

26.     Douglas County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

27.     Faribault County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

28.     Goodhue County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

29.     Hennepin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

30.     Hennepin County Community Corrections is an agency sited in Hennepin County, which can be sued under Minn. Stat. § 466.01, et seq.  Tom Merkel is its Director.

31.     Jackson County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.  Jackson County has its own criminal probation department.

32.     Lake County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

33.     Martin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

34.     Mille Lacs County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

35.     Nicollet County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.  Nicollet County has its own criminal probation department.

36.     Olmsted County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

37.     Ottertail County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

38.     Ramsey County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

39.     Renville County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

40.     St. Louis County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

41.     Scott County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

42.     Steele County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

43.     Washington County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

44.     Winona County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

45.     Wright County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, et seq.

46.      Mona Dohman is the Commissioner of Minnesota Department of Public Safety.

47.     Lori Swanson is the Attorney General of Minnesota.

48.     Colonel Kevin Daly is Chief of State Patrol of Minnesota.

49.      Lucinda Jesson is the Commissioner of Minnesota Department of Human Services.

50.     Tom Roy is the Commissioner of the Minnesota Department of Corrections with offices in Minnesota including but not limited to St. Paul, Albert Lea, Martin County and LeSueur County.

51.     Jeff Shorba is State Court Administrator responsible for administration of state court employees.

52.     City of Austin is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

53.     City of Cannon Falls is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

54.     City of Chaska is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

55.     City of Cloquet is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

56.     City of Deerwood is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

57.     City of Duluth is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

58.     City of Eagan is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

59.     City of Fairmont is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

60.     City of Goodview is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

61.     City of Hastings is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

62.     City of Kasson is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

63.     City of Kenyon is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

64.     City of Lake City  is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

65.     Lakes Area Police Department is a joint power entity created by the Cities of Lindstrom and Chisago City under Minn. Stat. § 471.59, et. seq., which can be sued under Minn. Stat. § 466.01, et seq.

66.     City of Mantorville is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

67.     City of Medina is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

68.     City of Minneapolis is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

69.     City of Minnetonka is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

70.     City of Oakdale is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

71.     City of Park Rapids is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

72.     City of Plainview is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

73.     City of Prior Lake is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

74.     City of Red Wing is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

75.     City of Richfield is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

76.     City of Rochester is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

77.     City of Rosemount is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

78.     City of Roseville is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

79.     City of Sartell is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

80.     City of St. Cloud is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

81.     City of St. Paul is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

82.     City of Staples is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

83.     City of Stillwater is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

84.     City of Wabasha is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

85.    City of Waterville is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

86.    City of Wells is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

87.    City of White Bear Lake is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

88.    City of Winona is a city in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

89.    Fond du Lac Police Department is an agency of the Fond du Lac Band of Lake Superior Chippewa located in Minnesota.

90.    Metro Transit Police Department, a component of Metro Transit and the Metropolitan Council, is a police department in Minnesota which can be sued under Minn. Stat. § 466.01, et seq.

91.    John and Jane Does (1-1000) are individuals acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of above-named Defendants sited in Minnesota.

92.    Department of Public Safety Does (1-30) are individuals acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety.

93.    The Entity Does (1-50) include cities, counties, municipalities, district courts, court services and other entities sited in Minnesota who are not already Defendants.

**Factual Allegations**

94.     The Wabasha County governmental actions violating the DPPA were generally taken against the group and its members – including elected officials Representative Steve Drazkowski, County Commissioner Deb Roschen, County Commissioner Dave Harms and former County Commissioner Merl Norman.

95.     The group was politically active and spoke out on community and county affairs.

96.      Wabasha County law enforcement personnel and public employees manipulated the Minnesota Department of Public  Safety's system of maintaining personal, private information of Minnesota citizens to obtain DPPA-protected confidential information of the members of the group.

97.     The Wabasha County Defendants and other Defendants accessed Plaintiffs' DPPA-protected records, without law enforcement purpose, over 600 times – over 600 "pings" -- from April 18, 2003 through the filing of this complaint in 2013.

98.     Upon information and belief, the Wabasha County Defendants were "pinging" the DPPA-protected records of group members to see if they could be a criminal or political target based on records providing  politically valuable information such as violations, a suspended license, expired car license tabs, warrant for arrest, etc.

99.     The above-named Plaintiffs are members of a citizen group.

100.    The group consists of generally concerned people who politically participate together in Wabasha County government.

101.    First, the group encourages its members to speak out on issues, write and publish written materials and attend county board meetings.

102.    Second, members of the group have won and lost some elections.

103.    State Representative Steve Drazkowski, after losing a state senate race in 2006,  won the local state house seat  in 2007 (special election), 2008, 2010 and 2012.

104.    Commissioner Deb Roschen, after being Drazkowski's campaign manager, won a Wabasha County Board seat in 2010.

105.    Commissioner Dave Harms won a county board seat in 2010.

106.    Merl Norman won a county board seat in 2008, but lost his re-election bid in 2012.

107.    Third, the group and/or its members have engaged in two state court civil lawsuits to stop Wabasha County governmental illegalities.

108.    The first action alleges that the court-appointed Wabasha County Study Commission was improperly organized.  *In re: Petition of Michael E. Morath and Other Wabasha County Registered Voters to Establish the Wabasha County Government Study Commission*, Wabasha County District Court, File No. 79-CV-11-1269, *on appeal*, Minnesota Court of Appeals File No. A13-0786 (2013).

109.    The second lawsuit, filed in 2013, alleges that the Wabasha County Sherriff is operating a legally unauthorized Drivers Safety School.  *Association for Government Accountability*, Wabasha County District Court, File No. 79-CV-13-751 (complaint filed August 20, 2013).

110.    The Wabasha County Defendants, for improper political purposes, engaged in a practice of "pinging" the group members' DPPA-protected records because group members were engaged in politics, engaged in election campaigns and filed two lawsuits -- all critical of the Wabasha County government.

111.    "State Defendants" and "Other County, Court and Municipal Defendants" including Entity Does and  John and Jane Does acted in their individual capacities as supervisors, officers, deputies, staff, investigators, employees or agents of these Defendants.  They illegally accessed the above-named Plaintiffs' driver records in violation of the DPPA.

112.    It is, however, unknown at the time of the filing of this complaint, whether their illegalities were done, as with the Wabasha County Defendants' pings, for improper political purposes.

113.    The Driver and Vehicle Services Division ("DVS") of the DPS maintains a database containing the motor vehicle records of Minnesota drivers.  ("DVS Database") DVS makes the DVS Database available to law enforcement agencies for law enforcement purposes.

114.    The DVS Database contains "personal information" and "highly restricted information," as defined by 18 U:S.C. § 2725 ("Private Data"), including but not limited to names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, eye colors and organ donor instructions of Minnesota drivers.

115.    Minnesota law enforcement personnel access the DVS Database through a DVS website or through systems operated by the Bureau of Criminal Apprehension.

116.    As early as 2003, Defendants began accessing Plaintiffs' Private Data on the DVS Database.

117.    At the time Defendants began accessing Plaintiffs' Private Data, Defendants knew that such access without law enforcement purpose was a violation of the DPPA and understood the consequences of DPPA violations – including but not limited to $2,500 per violation or more.

118.    Officers or employees employed by, licensed by or otherwise accessing through Wabasha County impermissibly accessed Plaintiffs' Private Data approximately 140 times.

119.    Officers or employees employed by, licensed by or otherwise accessing through Anoka County impermissibly accessed Plaintiffs' Private Data approximately 10 times.

120.    Officers or employees employed by, licensed by or otherwise accessing through Anoka County Community Corrections impermissibly accessed Plaintiffs' Private Data approximately 4 times.

121.    Officers or employees employed by, licensed by or otherwise accessing through Benton County impermissibly accessed Plaintiffs' Private Data at least 1 time.

122.    Officers or employees employed by, licensed by or otherwise accessing through Blue Earth County impermissibly accessed Plaintiffs' Private Data at least 1 time.

123.    Officers or employees employed by, licensed by or otherwise accessing through Blue Earth County Community Corrections impermissibly accessed Plaintiffs' Private Data approximately 2 times.

124.    Officers or employees employed by, licensed by or otherwise accessing through Chisago County impermissibly accessed Plaintiffs' Private Data at least 1 time.

125.    Officers or employees employed by, licensed by or otherwise accessing through Dakota County impermissibly accessed Plaintiffs' Private Data approximately 12 times.

126.    Officers or employees employed by, licensed by or otherwise accessing through Dodge County impermissibly accessed Plaintiffs' Private Data approximately 5 times.

127.    Officers or employees employed by, licensed by or otherwise accessing through Douglas County impermissibly accessed Plaintiffs' Private Data at least 1  time.

128.    Officers or employees employed by, licensed by or otherwise accessing through Faribault County impermissibly accessed Plaintiffs' Private Data at least 1 time.

129.    Officers or employees employed by, licensed by or otherwise accessing through Goodhue County impermissibly accessed Plaintiffs' Private Data approximately 10  times.

130.    Officers or employees employed by, licensed by or otherwise accessing through Hennepin County impermissibly accessed Plaintiffs' Private Data approximately 3 times.

131.    Officers or employees employed by, licensed by or otherwise accessing through Hennepin County Community Corrections impermissibly accessed Plaintiffs' Private Data approximately 2 times.

132.    Officers or employees employed by, licensed by or otherwise accessing through Jackson County, including its criminal probation department, impermissibly accessed Plaintiffs' Private Data approximately 3 times.

133.    Officers or employees employed by, licensed by or otherwise accessing through Lake County impermissibly accessed Plaintiffs' Private Data at least 1 time.

134.    Officers or employees employed by, licensed by or otherwise accessing through Martin County impermissibly accessed Plaintiffs' Private Data approximately 2 times.

135.    Officers or employees employed by, licensed by or otherwise accessing through Mille Lacs County impermissibly accessed Plaintiffs' Private Data approximately 2 times.

136.     Officers or employees employed by, licensed by or otherwise accessing through Olmsted County impermissibly accessed Plaintiffs' Private Data approximately 32  times.

137.    Officers or employees employed by, licensed by or otherwise accessing through Ottertail County impermissibly accessed Plaintiffs' Private Data at least 1 time.

138.    Officers or employees employed by, licensed by or otherwise accessing through Ramsey County impermissibly accessed Plaintiffs' Private Data at least 1 time.

139.    Officers or employees employed by, licensed by or otherwise accessing through Renville County impermissibly accessed Plaintiffs' Private Data at least 1 time.

140.    Officers or employees employed by, licensed by or otherwise accessing through St. Louis County impermissibly accessed Plaintiffs' Private Data at least 1 time.

141.    Officers or employees employed by, licensed by or otherwise accessing through Scott County impermissibly accessed Plaintiffs' Private Data at least 1 time.

142.    Officers or employees employed by, licensed by or otherwise accessing through Steele County impermissibly accessed Plaintiffs' Private Data at least 1 time.

143.    Officers or employees employed by, licensed by or otherwise accessing through Washington County impermissibly accessed Plaintiffs' Private Data approximately 9 times.

144.    Officers or employees employed by, licensed by or otherwise accessing through Winona County impermissibly accessed Plaintiffs' Private Data approximately 7 times.

145.    Officers or employees employed by, licensed by or otherwise accessing through Wright County impermissibly accessed Plaintiffs' Private Data at least 1 time.

146.    Officers or employees employed by, licensed by or otherwise accessing through Minnesota Attorney General impermissibly accessed Plaintiffs' Private Data approximately 2 times.

147.    Officers or employees employed by, licensed by or otherwise accessing through Minnesota State Patrol impermissibly accessed Plaintiffs' Private Data approximately 82 times.

148.     Officers or employees employed by, licensed by or otherwise accessing through Minnesota Department of Human Services impermissibly accessed Plaintiffs' Private Data approximately 19 times.

149.      Officers or employees employed by, licensed by or otherwise accessing through Minnesota Department of Corrections, including the offices in St. Paul, Albert Lea, Martin County and LeSueur County, impermissibly accessed Plaintiffs' Private Data approximately 4 times.

150.     Officers or employees employed by, licensed by or otherwise accessing through Minnesota Court Administrator, including the offices in various District Courts, impermissibly accessed Plaintiffs' Private Data approximately 28 times.

151.     Officers or employees employed by, licensed by or otherwise accessing through City of Austin impermissibly accessed Plaintiffs' Private Data at least 1  time.

152.     Officers or employees employed by, licensed by or otherwise accessing through City of Cannon Falls impermissibly accessed Plaintiffs' Private Data at least 1 time.

153.     Officers or employees employed by, licensed by or otherwise accessing through City of Chaska impermissibly accessed Plaintiffs' Private Data at least 1 time.

154.     Officers or employees employed by, licensed by or otherwise accessing through City of Cloquet impermissibly accessed Plaintiffs' Private Data at least 1 time.

155.     Officers or employees employed by, licensed by or otherwise accessing through City of Deerwood impermissibly accessed Plaintiffs' Private Data approximately 3 times.

156.    Officers or employees employed by, licensed by or otherwise accessing through City of Duluth impermissibly accessed Plaintiffs' Private Data at least 1 time.

157.    Officers or employees employed by, licensed by or otherwise accessing through City of Eagan impermissibly accessed Plaintiffs' Private Data at least 1 time.  .

158.    Officers or employees employed by, licensed by or otherwise accessing through City of Fairmont impermissibly accessed Plaintiffs' Private Data approximately 7 times.

159.    Officers or employees employed by, licensed by or otherwise accessing through City of Goodview impermissibly accessed Plaintiffs' Private Data approximately 3 times.

160.    Officers or employees employed by, licensed by or otherwise accessing through City of Hastings impermissibly accessed Plaintiffs' Private Data at least 1 time.

161.    Officers or employees employed by, licensed by or otherwise accessing through City of Kasson impermissibly accessed Plaintiffs' Private Data approximately 5 times.

162.    Officers or employees employed by, licensed by or otherwise accessing through City of Kenyon impermissibly accessed Plaintiffs' Private Data approximately 2 times.

163.    Officers or employees employed by, licensed by or otherwise accessing through City of Lake City impermissibly accessed Plaintiffs' Private Data approximately 19  times.   Officers or employees employed by, licensed by or otherwise accessing

through Lakes Area Police Department impermissibly accessed Plaintiffs' Private Data approximately 7 times.

164.    Officers or employees employed by, licensed by or otherwise accessing through City of Mantorville impermissibly accessed Plaintiffs' Private Data approximately 2 times.

165.    Officers or employees employed by, licensed by or otherwise accessing through City of Medina impermissibly accessed Plaintiffs' Private Data approximately 2 times.

166.    Officers or employees employed by, licensed by or otherwise accessing through City of Minneapolis impermissibly accessed Plaintiffs' Private Data approximately 2  times.

167.    Officers or employees employed by, licensed by or otherwise accessing through City of Minnetonka impermissibly accessed Plaintiffs' Private Data at least 1 time.

168.    Officers or employees employed by, licensed by or otherwise accessing through City of Oakdale impermissibly accessed Plaintiffs' Private Data at least 1  time.

169.    Officers or employees employed by, licensed by or otherwise accessing through City of Park Rapids impermissibly accessed Plaintiffs' Private Data at least 1 time.

170.    Officers or employees employed by, licensed by or otherwise accessing through City of Plainview impermissibly accessed Plaintiffs' Private Data approximately 11 times.

171.    Officers or employees employed by, licensed by or otherwise accessing through City of Prior Lake impermissibly accessed Plaintiffs' Private Data at least 1 time.

172.    Officers or employees employed by, licensed by or otherwise accessing through City of Red Wing impermissibly accessed Plaintiffs' Private Data approximately 13  times.

173.    Officers or employees employed by, licensed by or otherwise accessing through City of Richfield impermissibly accessed Plaintiffs' Private Data at least 1  time.

174.    Officers or employees employed by, licensed by or otherwise accessing through City of Rochester impermissibly accessed Plaintiffs' Private Data approximately 32  times.

175.    Officers or employees employed by, licensed by or otherwise accessing through City of Rosemount impermissibly accessed Plaintiffs' Private Data at least 1 time.

176.    Officers or employees employed by, licensed by or otherwise accessing through City of Roseville impermissibly accessed Plaintiffs' Private Data approximately 4 times.

177.    Officers or employees employed by, licensed by or otherwise accessing through City of Sartell impermissibly accessed Plaintiffs' Private Data at least 1  time.

178.    Officers or employees employed by, licensed by or otherwise accessing through City of St. Cloud impermissibly accessed Plaintiffs' Private Data at least 1 time.

179.    Officers or employees employed by, licensed by or otherwise accessing through City of St. Paul impermissibly accessed Plaintiffs' Private Data approximately 5 times.

180.    Officers or employees employed by, licensed by or otherwise accessing through City of Staples impermissibly accessed Plaintiffs' Private Data at least 1 time.

181.    Officers or employees employed by, licensed by or otherwise accessing through City of Stillwater impermissibly accessed Plaintiffs' Private Data at least 1 time.

182.    Officers or employees employed by, licensed by or otherwise accessing through City of Wabasha impermissibly accessed Plaintiffs' Private Data approximately 18  times.

183.    Officers or employees employed by, licensed by or otherwise accessing through City of Waterville impermissibly accessed Plaintiffs' Private Data at least 1 time.

184.    Officers or employees employed by, licensed by or otherwise accessing through City of Wells impermissibly accessed Plaintiffs' Private Data at least 1 time.

185.    Officers or employees employed by, licensed by or otherwise accessing through City of White Bear Lake impermissibly accessed Plaintiffs' Private Data approximately 3  times.

186.    Officers or employees employed by, licensed by or otherwise accessing through City of Winona impermissibly accessed Plaintiffs' Private Data approximately 18  times.

187.    Officers or employees employed by, licensed by or otherwise accessing through Fond du Lac Police Department impermissibly accessed Plaintiffs' Private Data at least 1 time.

188.    Officers or employees employed by, licensed by or otherwise accessing through Metro Transit Police Department impermissibly accessed Plaintiffs' Private Data at least 1 time.

189.    Upon information and belief, John and Jane Does (1-1000), individuals acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of above-named Defendants sited in Minnesota, impermissibly accessed Plaintiffs' Private Data at least 1 time.

190.    Upon information and belief, Department of Public Safety Does (1-30), individuals acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety, impermissibly allowed access to the Plaintiffs' Private Data.

191.    Upon information and belief, the Entity Does (1-50), including cities, counties, municipalities, district courts and court services and other entities sited in Minnesota who are not already Defendants, impermissibly allowed access to the Plaintiffs' Private Data.

192.    All of the above accesses were committed knowingly.

193.    Defendants, including officers and employees, viewed Plaintiffs' private data from the DVS Database including home addresses, color photograph or image, date of birth, eye color, height, weight, driver identification number, etc.

29

194.    A true and correct copy of a table listing the unauthorized DVS Database accesses of all Plaintiffs is attached as Exhibit A.  The table was produced based on audits prepared by the Minnesota Department of Public Safety showing the access of Plaintiffs' driver's license information and showing the "station," meaning the police department, sheriff's office or other governmental entity through which the officer or official accessed the information.

195.    Upon information and belief, these individuals used, disclosed to others, or otherwise accessed Plaintiffs' DPPA-protected information.

196.    Each unauthorized use, disclosure or access of Plaintiffs' DPPA-protected information, made while acting under color of state and federal law, violated Plaintiffs' federal civil rights and constituted behavior prohibited by federal statute, Minnesota statute, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

197.    Under the direction of the Department of Public Safety, its Commissioner and employees (collectively, "DPS"), the DPS knowingly created the DVS Database that includes Plaintiffs' Private Data and the system for law-enforcement personnel to access that information.

198.    DPS knowingly maintained and updated the DVS Database that included Plaintiffs' Private Data.

199.    DPS knowingly provided access to the DVS Database that included Plaintiffs' Private Data.

200.    DPS had the ability to determine that drivers' license information, including Plaintiffs' Private Data was being accessed on multiple occasions by multiple law-enforcement personnel from multiple law-enforcement agencies.

201.    DPS had the ability to prevent unauthorized access to the DVS Database, including access to Plaintiffs' Private Data.

202.    DPS failed to prevent unauthorized access to the DVS Database, including access to Plaintiffs' Private Data.

203.    DPS knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disclosure of Plaintiffs' Private Data.

204.    The policy of the State of Minnesota is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of the State's citizens and inhabitants, including its drivers' privacy rights, and including those rights which are required to be protected by federal law.

205.    Allowing individuals to access the DVS Database without a permissible reason is a breach of confidentiality.

206.    In particular, it is the policy of the State of Minnesota, as outlined in Minn.Stat. § 171.02, subd. 7 to comply with the provisions and requirements of DPPA.

207.    This policy is also set forth in the driver's license application and set forth in statutory language with proper citation to that federal statute.

208.    DPS knowingly disclosed Plaintiffs' Private Data and violated state policy by devising and implementing a database, such as the DVS Database, that failed

abysmally to uphold the privacy rights of Plaintiffs and others similarly situated as protected under DPPA.

209. The failure exposed Plaintiffs' information to impermissible and knowing access by various persons, including the Defendants in this lawsuit.

210. This constitutes a knowing disclosure of Plaintiffs' information within the meaning of the DPPA.

211. DPS knowingly devised and implemented a database, and a method for using and misusing that database, that both permitted and encouraged, through the nature and monitoring of the system, accesses by law-enforcement personnel, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with DPPA.

212. The system knowingly devised and implemented by DPS failed to set rules for protecting privacy rights.

213. This system permitted the accessing of the database from personal computers.

214. This system permitted the giving out of passwords to others.

215. This system permitted the accessing of the system by persons without any accountability or even in some circumstances without the ability to trace the person who made the access.

216. This system does not require adequate training on the use of the DVS Database by law enforcement officers and other officials with access to the DVS Database.

217. Accordingly, the effective monitoring of the system is difficult, if not impossible under the system as devised and implemented by DPS, who deliberately emphasized and favored the convenience of the system by users at the expense of protecting the privacy rights of the persons in the DVS Database.

218. This deliberate emphasis and preference for convenience to the system users over the privacy rights of the drivers was known to DPS, and was purposeful.

219. In failing to properly implement, maintain, and monitor the DVS Database, DPS failed to follow Minnesota state policy.

220. Many viable methods were and are available to prevent this illegal accessing of information.

221. Upon information and belief, DPS actually knew that law-enforcement officers and other officials were improperly accessing the databases for impermissible purposes.

222. Upon information and belief, DPS actually knew that law-enforcement officers and other officials were viewing Plaintiffs' Private Data.

223. The information in the DVS Database is far greater and contains more private personal information than is customarily known to non-law enforcement personnel, and includes the social security numbers of the drivers, as well as health information.

224. These accesses are committed surreptitiously, and without the knowledge of the victims, including Plaintiffs, which knowledge is kept hidden and concealed from the victims including Plaintiffs.

225.    Until recently, the policy of the DPS and BCA was to restrict the ability of the driver to find out who had accessed his or her driver's license information. Specifically, the DPS and BCA reports used to construct Exhibit A attached here were not available from the respective agencies until recently.

226.    The DPS and BCA policy is still to prevent the driver from finding out the identity of the individual who actually accessed that information.

227.    A recent bill in the state legislature would have required the DPS to notify the victims if their information had been impermissibly accessed by law enforcement personnel or another official, but that bill failed to pass in the 2013 Legislative Session.

228.    There has not been a single instance of which Plaintiffs are aware involving themselves or anyone else where a specific officer or official has informed the person that his or her information has been accessed.

229.    The secretive, surreptitious, concealed, and hidden nature of these accesses is kept secret from the general public and from the victims, including Plantiffs, but is well known throughout the law enforcement community, from top-ranking officers to the low-ranking officers.

230.    The DPS has acquiesced, facilitated, approved or simply ignored the conduct.

231.    Even if the DPS had no actual knowledge of the impermissible uses of the database they oversaw, they were reckless in their supervision of their subordinates who operated the databases.

232.     In 2013, Plaintiffs began having suspicions that law enforcement officers and other officials were targeting them for improper access of their private information.

233.     Plaintiffs contacted DPS, and later the BCA, to inquire whether law enforcement officers and other officials were viewing their private information.

234.     The Plaintiffs were shocked and disgusted to learn from the DPS and BCA audit reports that they had determined that over 50 different departments and agencies had reviewed the Plaintiffs' Private Data over 600  times since 2003.

235.     Before receiving the audit reports, the Plaintiffs had no knowledge that their Private Data had been accessed through the DVS Database, nor could they reasonably be expected to have discovered this abuse because DPS and BCA policy did not allow for such audit reports until recently.

236.     Learning of this massive invasion of privacy, Plaintiffs feared baseless criminal investigations as had occurred before, meritless criminal prosecutions which had occurred before and further invasions of privacy by law enforcement officers and other officials which had occurred before.

237.     Plaintiffs suffered different levels of emotional distress including anxiety and other physical manifestations such as loss of sleep, loss of appetite and illness.

238.     Plaintiffs believe that even more unauthorized accesses and viewings will occur in the future if the policies of the Defendants which are entities are not changed to bring the actual custom and practice into compliance with their own written rules, with DPS rules, and with federal law, including the DPPA.

239.    Included in the DPS audits were references to personnel from the law enforcement departments and other agencies.

240.    The individual Defendants' identities (John and Jane Does) who actually accessed Plaintiffs' data are not presently known, and cannot be revealed by DPS and BCA pursuant to the Minnesota Government Data Practices Act.  Plaintiffs anticipate that these yet-to-be-named Defendants will become known through discovery.

241.    Also, the individual Defendants' identities (John and Jane Does) who are supervisors of the persons who made the accesses to Plaintiffs' data are similarly not known. Plaintiffs anticipate that these yet-to-be-named Defendants will become known through discovery.

242.    The remaining Entity Defendants' identities (Entity Does) are not presently known, because not all of the entities identified by the DPS have provided sufficient information to determine if their law enforcement personnel's access to the database was unauthorized.  Plaintiffs anticipate that these yet-to-be-named Defendants will become known through discovery.

243.    At the relevant times for this lawsuit, the login page to the DVS website included the following admonition, or a similar admonition:

> Access to this service is for authorized personnel only conducting official business.  If you do not have the express authorization, you must exit now or face the consequences of violating Chapter 13 of the Minnesota and other laws. Further, the State of Minnesota prohibits unauthorized access, disclosure, duplication, modification, diversion, destruction, loss, misuse, or theft of its information in accordance with the Minnesota Statutes Sections 609.87-609.891.

> DVS collects and maintains electronic access data. This data may be used and disseminated for the purpose of evaluating electronic government services; to

prevent unlawful intrusions into government electronic systems; or as otherwise provided by law.

244.   Upon information and belief, law enforcement officials do receive training admonitions against viewing Private Data for unofficial purposes.

245.   Whatever training, monitoring, or inquiry into the officers' and employees' usage of the information systems has been adopted, it is woefully inadequate to ensure that access is used properly and lawfully.

246.   Despite this training, Defendants which are entities and individual Defendants who are supervisors allowed their employees, including but limited to Defendants who are employees accessing the database, to view Plaintiffs' Private Data for unlawful purposes.

247.   Defendants which are entities and individual Defendants who are supervisors permitted, condoned, or acquiesced in this custom and practice of illegal accessing Plaintiffs' Private Data, and knew or should have known that it was occurring.

248.   This illegal access of Plaintiffs' Private Data occurs with regularity.

249.   Defendants which are entities have lax policies and lax enforcement of these policies which allow for these intrusions.

250.   Defendants which are entities have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information.

251.   The extent of this illegal access is widespread and pervasive throughout departments, and is a custom and practice.

252.    The widespread practice is demonstrated by the systematic tolerance of illegal accesses.

253.    Further evidence of custom and practice can be found in actual statements made by current officers.  One of the officers was quoted in a magazine article about the illegal access in previous cases involving breach of DPPA privacy as saying "every single cop in the state has done this. Chiefs on down."

254.    Further evidence of custom and practice is based on actual statements made by former officers, one of whom was quoted in a magazine article about illegal accesses of other individuals as saying that, "[y]ou used to look up people without a second thought. You'd look up old friends from high school or just someone you used to know."

255.    Each law-enforcement personnel has a password allowing that individual to access the DVS Database.

256.    Law-enforcement personnel can access the DPS Database from any computer with internet access.

257.    Officers occasionally give other individuals their passwords, contrary to legal requirements.

258.    This system for accessing accountability and responsibility was and is prone to error and abuse, failing to protect drivers' private information.

259.    When Defendants viewed the Plaintiffs' private information, they did not do so to carry out official police or other state functions.

260.    The Defendants who are individuals obtained Plaintiffs' personal information without probable cause or reasonable suspicion.

261.   The Plaintiffs never waived the protections of the DPPA.

262.   Defendants' actions have violated the 42 U.S.C. §§ 1983, et seq. (civil rights statutes), the Fourth and Fourteenth Amendments of the United States Constitution, the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.,  and Minnesota common law invasion of privacy.

263.   The Defendants have shown a deliberate disregard for the constitutional and statutory rights of Plaintiffs adopting customs and practices of pinging the Plaintiffs' protected records without a law-enforcement purpose.

264.   Moreover, high-level state public officials and state administrative departments have shown an equal indifference to federal law.

265.   The Minnesota officials and administrative departments have created a system that is easily and frequently abused by local law enforcement officials for political purposes.

266.   Rather than designing a better system or taking reasonable steps to prevent its abuse, these officials have done nothing, willfully ignoring the widespread, pervasive violation of DPPA by those with access to the system.

267.   Through lax policies and no enforcement of  DPPA, these officials, administrative departments and governmental units have caused direct damage to the Plaintiffs.

268.   Also, the Defendants have trampled upon the clear legislative protections of DPPA so that all citizens – particularly those that are politically active – will now feel less secure in their privacy.

269.    The Plaintiffs have been harmed by these intrusions into their private lives.

270.    The sheer volume of the intrusions demonstrates that Defendants are unfairly hostile and careless toward Plaintiffs' privacy and safety.

271.    As a result of these invasions of privacy, Plaintiffs feel they have lost control over privacy in their respective lives.

272.    As a result of these invasions of privacy, certain Plaintiffs have suffered emotional distress.

273.    This lawsuit's prayer for relief seeks, among other items, injunctive relief and monetary damages for injuries sustained when law enforcement personnel and officials in Minnesota illegally viewed Plaintiffs' private, personal and confidential driver's license information without a legitimate law-enforcement purpose.

## COUNT I

### Roschen Plaintiffs  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

274.    Roschen Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 273 as though fully set forth in this Paragraph 274.

275.    The Roschen Plaintiffs provided personal information to the DPS including their addresses, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

276.    The DPS also maintained a driving record for each of the Roschen Plaintiffs.

40

277.    None of the Roschen Plaintiffs provided consent for any of the Defendants to obtain, disclose or use their private information for anything but official law-enforcement business.

278.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

279.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

280.    Certain Defendants have violated the Roschen Plaintiffs legally protected interests under the DPPA.

281.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed the Roschen Plaintiffs' private data include:  Wabasha County; City of Wabasha; Washington County; Goodhue County; City of Lake City; City of Roseville; Minnesota State Patrol; Dodge County; Dakota County; Olmsted County; City of Plainview; City of White Bear Lake; County of Ramsey; City of Hastings.

282.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from the Roschen Plaintiffs' drivers licenses for purposes not permitted under the DPPA.

283.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Roschen Plaintiffs' personal

information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

284.   None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Roschen Plaintiffs' private information.

285.   By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Roschen Plaintiffs' personal information from the DVS Database fro an impermissible purpose.

286.   Individual Defendants knew that their actions relating to Roschen Plaintiffs' Private Data were in violation of the DPPA.

287.   Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Roschen Plaintiffs' private information by individual Defendants.

288.   The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Roschen Plaintiffs under the DPPA.

289.   The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

290.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Roschen Plaintiffs' private information.

291.    The sheer volume of personnel that obtained, disclosed or used Roschen Plaintiffs' private information makes apparent that the Defendants' use was not permissible.

292.    Defendant entities are each vicariously liable for the acts of individual defendants.

293.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Roschen Plaintiffs' private information.

294.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

295.    The Roschen Plaintiffs have suffered harm because their private information has been obtained and viewed unlawfully.

296.    The Roschen Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

297.    The Roschen Plaintiffs have suffered harm because their private information has been obtained unlawfully.  The Roschen Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

298.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

299.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Roschen Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  The Roschen Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

300.    In addition, under the DPPA, Roschen Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  The Roschen Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT II

### Drazkowski Plaintiffs  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

301.    Drazkowski Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 300 as though fully set forth in this Paragraph 301.

302.    The Drazkowski Plaintiffs provided personal information to the DPS including their addresses, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

303.    The DPS also maintained a driving record for each of the Drazkowski Plaintiffs.

304.    None of the Drazkowski Plaintiffs provided consent for any of the
Defendants to obtain, disclose or use their private information for anything but official
law-enforcement business.

305.    Intentionally obtaining, disclosing or using Private Data without an
authorized purpose is a violation of the DPPA.  The statute provides for criminal fines
and civil penalties.  18 U.S.C. §§ 2723, 2724.

306.    The DPPA provides redress for violations of a person's protected interest in
the privacy of his or her motor vehicle records and the indentifying information therein.

307.    Certain Defendants have violated the Drazkowski Plaintiffs legally
protected interests under the DPPA.

308.    The attached   Exhibit A is a table based on information from DPS audits
showing the certain Defendants and when the unauthorized accesses – pings – occurred.
The certain Defendants identified on Exhibit A who unlawfully accessed the Drazkowski
Plaintiffs' private data include:  Wabasha County; City of Wabasha; City of Cannon
Falls; Hennepin County Community Corrections; Hennepin County; City of Kenyon;
Lake County; Minnesota State Patrol; City of Plainview; City of Red Wing; City of
Winona; Attorney General; Goodhue County; City of Goodview; Department of Human
Services; City of Lake City; City of Roseville; State Court Administration; Winona
County; City of St. Paul; Olmsted County; Renville County; Wright County; Anoka
County; Dakota County; Department of Corrections; City of Sartell; City of Chaska; City
of Cloquet.

309.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from the Drazkowski Plaintiffs' drivers licenses for purposes not permitted under the DPPA.

310.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Drazkowski Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

311.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Drazkowski Plaintiffs' private information.

312.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Drazkowski Plaintiffs' personal information from the DVS Database fro an impermissible purpose.

313.    Individual Defendants knew that their actions relating to Drazkowski Plaintiffs' Private Data were in violation of the DPPA.

314.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Drazkowski Plaintiffs' private information by individual Defendants.

315.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Drazkowski Plaintiffs under the DPPA.

316.   The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

317.   Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Drazkowski Plaintiffs' private information.

318.   The sheer volume of personnel that obtained, disclosed or used Drazkowski Plaintiffs' private information makes apparent that the Defendants' use was not permissible.

319.   Defendant entities are each vicariously liable for the acts of individual defendants.

320.   Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Drazkowski Plaintiffs' private information.

321.   By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

322.   The Drazkowski Plaintiffs have suffered harm because their private information has been obtained and viewed unlawfully.

323.   The Drazkowski Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

324.   The Drazkowski Plaintiffs have suffered harm because their private information has been obtained unlawfully.  The Drazkowski Plaintiffs suffered and

continue to suffer harm by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

325.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

326.    Each of the Defendants listed in Exhibit A  has willfully and recklessly disregarded the law, entitling Drazkowski Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  The Drazkowski Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

327.    In addition, under the DPPA, Drazkowski Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  The Drazkowski Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT III

### Dave Harms  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

328.    Dave Harms reaffirms and realleges the allegations in Paragraphs 1 through 327 as though fully set forth in this Paragraph 328.

329.    Dave Harms provided personal information to the DPS including  address, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

330.    The DPS also maintained a driving record for Dave Harms.

331.    Dave Harms never provided consent for any of the Defendants to obtain, disclose or use Dave Harms' private information for anything but official law-enforcement business.

332.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

333.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

334.    Certain Defendants have violated Dave Harms' legally protected interests under the DPPA.

335.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed David Harms' private data include:  Wabasha County; City of Wabasha; Anoka County; Douglas County; City of Rochester; Washington County; Goodhue County; Department of Human Services; City of Lake City; City of Prior Lake; City of Rochester; City of St. Paul; Minnesota State Patrol; City of St. Cloud; Benton County; Mille Lacs County; City of

Red Wing; Winona County; Dakota County; City of Plainview; City of Rosemount; City of Richfield.

336.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from Dave Harms' driver's license for purposes not permitted under the DPPA.

337.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Dave Harms' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

338.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Dave Harms' private information.

339.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Dave Harms' personal information from the DVS Database fro an impermissible purpose.

340.    Individual Defendants knew that their actions relating to Dave Harms' Private Data were in violation of the DPPA.

341.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Dave Harms' private information by individual Defendants.

342.     The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Dave Harms under the DPPA.

343.     The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

344.     Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Dave Harms' private information.

345.     The sheer volume of personnel that obtained, disclosed or used Dave Harms' private information makes apparent that the Defendants' use was not permissible.

346.     Defendant entities are each vicariously liable for the acts of individual defendants.

347.     Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain Dave Harms' private information.

348.     By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

349.     Dave Harms has suffered harm because Dave Harms' private information has been obtained and viewed unlawfully.

350.     Dave Harms suffered and continues to suffer harm by virtue of the increased risk that Dave Harms' protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

51

351.    Dave Harms suffered harm because Dave Harms' private information has been obtained unlawfully.  Dave Harms suffered and continues to suffer harm by virtue of the increased risk that Dave Harms' protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

352.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

353.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Dave Harms to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20. Dave Harms is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

354.    In addition, under the DPPA, Dave Harms is entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  Dave Harms need not prove actual damages to receive said liquidated damages.

## COUNT IV

### Norman Plaintiffs  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

355.    Norman Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 354 as though fully set forth in this Paragraph 355.

356.    The Norman Plaintiffs provided personal information to the DPS including their addresses, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

357.    The DPS also maintained a driving record for each of the Norman Plaintiffs.

358.    None of the Norman Plaintiffs provided consent for any of the Defendants to obtain, disclose or use their private information for anything but official law-enforcement business.

359.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

360.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

361.    Certain Defendants have violated the Norman Plaintiffs legally protected interests under the DPPA.

362.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed the Norman Plaintiffs' private data include:  Wabasha County; City of Wabasha; Minnesota State Patrol; Olmsted County; City of Eagan; Anoka County; Dakota County; Goodhue County; Lakes Area Police Department; City of Minneapolis; Chisago County; City of Rochester; Steele County; City of Duluth.

363.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from the Norman Plaintiffs' drivers licenses for purposes not permitted under the DPPA.

364.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Norman Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

365.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Norman Plaintiffs' private information.

366.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Norman Plaintiffs' personal information from the DVS Database fro an impermissible purpose.

367.    Individual Defendants knew that their actions relating to Norman Plaintiffs' Private Data were in violation of the DPPA.

368.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Norman Plaintiffs' private information by individual Defendants.

369.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Norman Plaintiffs under the DPPA.

370.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

371.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Norman Plaintiffs' private information.

372.    The sheer volume of personnel that obtained, disclosed or used Norman Plaintiffs' private information makes apparent that the Defendants' use was not permissible.

373.    Defendant entities are each vicariously liable for the acts of individual defendants.

374.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Norman Plaintiffs' private information.

375.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

376.    The Norman Plaintiffs have suffered harm because their  private information has been obtained and viewed unlawfully.

377.    The Norman Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their  protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

378.    The Norman Plaintiffs have suffered harm because their private information has been obtained unlawfully.  The Norman Plaintiffs suffered and continue to suffer

harm by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

379.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

380.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Norman Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  The Norman Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

381.    In addition, under the DPPA, Norman Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  The Norman Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT V

**Snow Plaintiffs  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A**

382.    Snow Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 381 as though fully set forth in this Paragraph 382.

383.    The Snow Plaintiffs provided personal information to the DPS including their addresses, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

384.    The DPS also maintained a driving record for each of the Snow Plaintiffs.

385.    None of the Snow Plaintiffs provided consent for any of the Defendants to obtain, disclose or use their private information for anything but official law-enforcement business.

386.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

387.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

388.    Certain Defendants have violated the Snow Plaintiffs legally protected interests under the DPPA.

389.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed the Snow Plaintiffs' private data include:  Wabasha County; City of Wabasha; State Court Administration (District Court Users); Department of Corrections; Dodge County; City of Fairmont; Department of Human Services; LeSueur County; Anoka County Community Corrections; Blue Earth County Community Corrections; Hennepin County Community Corrections; Anoka County; Blue Earth County; Hennepin County; Faribault County;

Jackson County; City of Lake City; City of Mantorville; Martin County; Mille Lacs County; Nicollet County; City of Plainview; City of Waterville; City of Wells; Lakes Area Police Department; Minnesota State Patrol; City of Kasson; City of St. Paul; City of Medina; St. Louis County; City of Deerwood; Olmsted County; City of Rochester; Washington County; City of Stillwater; City of Park Rapids; Fond du Lac Police Department.

390.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from the Snow Plaintiffs' drivers licenses for purposes not permitted under the DPPA.

391.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Snow Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

392.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Snow Plaintiffs' private information.

393.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Snow Plaintiffs' personal information from the DVS Database fro an impermissible purpose.

394.    Individual Defendants knew that their actions relating to Snow Plaintiffs' Private Data were in violation of the DPPA.

395.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or

participated in obtaining, disclosing or using of Snow Plaintiffs' private information by individual Defendants.

396.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Snow Plaintiffs under the DPPA.

397.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

398.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Snow Plaintiffs' private information.

399.    The sheer volume of personnel that obtained, disclosed or used Snow Plaintiffs' private information makes apparent that the Defendants' use was not permissible.

400.    Defendant entities are each vicariously liable for the acts of individual defendants.

401.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Snow Plaintiffs' private information.

402.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

403.    The Snow Plaintiffs have suffered harm because their  private information has been obtained and viewed unlawfully.

404.    The Snow Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

405.    The Snow Plaintiffs have suffered harm because their private information has been obtained unlawfully.  The Snow Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

406.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

407.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Snow Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  The Snow Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

408.    In addition, under the DPPA, Snow Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  The Snow Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT VI

### Jerry Gelao   – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

409.    Jerry Gelao reaffirms and realleges the allegations in Paragraphs 1 through 408 as though fully set forth in this Paragraph 409.

410.    Jerry Gelao  provided personal information to the DPS including his address, color photograph, date of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

411.    The DPS also maintained a driving record for Jerry  Gelao.

412.    Jerry  Gelao  did not provide consent for any of the Defendants to obtain, disclose or use his  private information for anything but official law-enforcement business.

413.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

414.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

415.    Certain Defendants have violated Jerry Gelao's legally protected interests under the DPPA.

416.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed Jerry Gelao's

private data include:  Wabasha County; City of Wabasha; City of New Brighton; City of Rochester; City of Plainview; Olmsted County; City of St. Paul; Anoka County; Dakota County; Ottertail County.

417.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from Jerry Gelao's drivers records  for purposes not permitted under the DPPA.

418.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used Jerry Gelao's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

419.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Jerry Gelao's private information.

420.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Jerry Gelao's personal information from the DVS Database fro an impermissible purpose.

421.    Individual Defendants knew that their actions relating to Jerry Gelao's Private Data were in violation of the DPPA.

422.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Jerry Gelao's private information by individual Defendants.

423.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Jerry Gelao under the DPPA.

424.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

425.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Jerry Gelao's private information.

426.    The sheer volume of personnel that obtained, disclosed or used Jerry Gelao's private information makes apparent that the Defendants' use was not permissible.

427.    Defendant entities are each vicariously liable for the acts of individual defendants.

428.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Jerry Gelao's private information.

429.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

430.    The Jerry Gelao have suffered harm because his  private information has been obtained and viewed unlawfully.

431.    Jerry Gelao suffered and continues to suffer harm by virtue of the increased risk that his  protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

432.     Jerry Gelao has suffered harm because his private information has been obtained unlawfully.  The Jerry Gelao suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

433.     This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

434.     Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Jerry Gelao to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  Jerry Gelao is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

435.     In addition, under the DPPA, Jerry Gelao is entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  Jerry Gelao need not prove actual damages to receive said liquidated damages.

## COUNT VII

### Adams Plaintiffs  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

436.     Adams Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 435 as though fully set forth in this Paragraph 436.

437.    The Adams Plaintiffs provided personal information to the DPS including their addresses, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

438.    The DPS also maintained a driving record for each of the Adams Plaintiffs.

439.    None of the Adams Plaintiffs provided consent for any of the Defendants to obtain, disclose or use their private information for anything but official law-enforcement business.

440.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

441.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

442.    Certain Defendants have violated the Adams Plaintiffs legally protected interests under the DPPA.

443.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed the Adams Plaintiffs' private data include:  Wabasha County; City of Wabasha; City of Oakdale; City of Roseville; Anoka County; Hennepin County; Metro Transit Police Department; Washington County; City of Austin; Dakota County; Goodhue County; Minnesota State Patrol; Olmsted County; Scott County; City of Rochester; City of Minnetonka.

444.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from the Adams Plaintiffs' drivers licenses for purposes not permitted under the DPPA.

445.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Adams Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

446.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Adams Plaintiffs' private information.

447.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Adams Plaintiffs' personal information from the DVS Database fro an impermissible purpose.

448.    Individual Defendants knew that their actions relating to Adams Plaintiffs' Private Data were in violation of the DPPA.

449.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Adams Plaintiffs' private information by individual Defendants.

450.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Adams Plaintiffs under the DPPA.

451.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

452.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Adams Plaintiffs' private information.

453.    The sheer volume of personnel that obtained, disclosed or used Adams Plaintiffs' private information makes apparent that the Defendants' use was not permissible.

454.    Defendant entities are each vicariously liable for the acts of individual defendants.

455.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Adams Plaintiffs' private information.

456.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

457.    The Adams Plaintiffs have suffered harm because their private information has been obtained and viewed unlawfully.

458.    The Adams Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

459.    The Adams Plaintiffs have suffered harm because their private information has been obtained unlawfully.  The Adams Plaintiffs suffered and continue to suffer harm

by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

460.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

461.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Adams Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  The Adams Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

462.    In addition, under the DPPA, Adams Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  The Adams Plaintiffs need not prove actual damages to receive said liquidated damages.

**COUNT VII**

**Virginia Kautz  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A**

463.    Virginia Kautz reaffirms and realleges the allegations in Paragraphs 1 through 462 as though fully set forth in this Paragraph 463.

464.   Virginia Kautz provided personal information to the DPS including address, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

465.   The DPS also maintained a driving record for Virginia Kautz.

466.   Virginia Kautz never provided consent for any of the Defendants to obtain, disclose or use Virginia Kautz's private information for anything but official law-enforcement business.

467.   Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

468.   The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

469.   Certain Defendants have violated Virginia Kautz's legally protected interests under the DPPA.

470.   The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed Virginia Kautz's private data include:  Wabasha County; City of Wabasha; City of Rochester; Minnesota State Patrol; Olmsted County; City of Rochester; Anoka County.

471.   The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from Virginia Kautz's driver's license for purposes not permitted under the DPPA.

472.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Virginia Kautz's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

473.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Virginia Kautz's private information.

474.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Virginia Kautz's personal information from the DVS Database fro an impermissible purpose.

475.    Individual Defendants knew that their actions relating to Virginia Kautz's Private Data were in violation of the DPPA.

476.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Virginia Kautz's private information by individual Defendants.

477.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Virginia Kautz under the DPPA.

478.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA,

even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

479.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Virginia Kautz's private information.

480.    The sheer volume of personnel that obtained, disclosed or used Virginia Kautz's private information makes apparent that the Defendants' use was not permissible.

481.    Defendant entities are each vicariously liable for the acts of individual defendants.

482.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain Virginia Kautz's private information.

483.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

484.    Virginia Kautz has suffered harm because Virginia Kautz' private information has been obtained and viewed unlawfully.

485.    Virginia Kautz suffered and continues to suffer harm by virtue of the increased risk that Virginia Kautz's protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

486.    Virginia Kautz suffered harm because Virginia Kautz' private information has been obtained unlawfully.  Virginia Kautz suffered and continues to suffer harm by virtue of the increased risk that Virginia Kautz's protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

487.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

488.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Virginia Kautz to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20. Virginia Kautz is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

489.    In addition, under the DPPA, Virginia Kautz is entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  Virginia Kautz need not prove actual damages to receive said liquidated damages.

## COUNT VIII

### Julie Porcher  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

490.    Julie Porcher reaffirms and realleges the allegations in Paragraphs 1 through 489 as though fully set forth in this Paragraph 490.

491.    Julie Porcher provided personal information to the DPS including  address, color photographs, dates of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

492.    The DPS also maintained a driving record for Julie Porcher.

72

493.    Julie Porcher never provided consent for any of the Defendants to obtain, disclose or use Julie Porcher's private information for anything but official law-enforcement business.

494.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

495.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

496.    Certain Defendants have violated Julie Porcher's legally protected interests under the DPPA.

497.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed Julie Porcher's private data include:  Wabasha County; City of Plainview; Minnesota State Patrol.

498.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from Julie Porcher's driver's license for purposes not permitted under the DPPA.

499.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Julie Porcher's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

500.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Julie Porcher's private information.

501.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Julie Porcher's personal information from the DVS Database fro an impermissible purpose.

502.    Individual Defendants knew that their actions relating to Julie Porcher's Private Data were in violation of the DPPA.

503.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Julie Porcher's private information by individual Defendants.

504.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Julie Porcher under the DPPA.

505.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

506.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Julie Porcher's private information.

507.   The sheer volume of personnel that obtained, disclosed or used Julie Porcher's private information makes apparent that the Defendants' use was not permissible.

508.   Defendant entities are each vicariously liable for the acts of individual defendants.

509.   Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain Julie Porcher's private information.

510.   By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

511.   Julie Porcher has suffered harm because Julie Porcher's private information has been obtained and viewed unlawfully.

512.   Julie Porcher suffered and continues to suffer harm by virtue of the increased risk that Julie Porcher's protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

513.   Julie Porcher suffered harm because Julie Porcher's private information has been obtained unlawfully.  Julie Porcher suffered and continues to suffer harm by virtue of the increased risk that Julie Porcher's protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

514.   This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

515.   Each of the certain Defendants listed in Exhibit A  has willfully and recklessly disregarded the law, entitling Julie Porcher to punitive damages under the

DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of

Minnesota state law as set forth in Minn. Stat. § 549.20. Julie Porcher is entitled to actual

damages, punitive damages, reasonable attorneys' fees and other litigation costs

reasonably incurred, and such other preliminary and equitable relief as the court

determines to be appropriate.  18 U.S.C. § 2724(b).

516.    In addition, under the DPPA, Julie Porcher is entitled to a baseline

liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. §

2721(b)(1).  Julie Porcher need not prove actual damages to receive said liquidated

damages.

## COUNT IX

### Graves Plaintiffs  – Violations of DPPA Against Certain Defendants Who Accessed Information Listed on Exhibit A

517.    Graves Plaintiffs reaffirm and reallege the allegations in Paragraphs 1

through 516 as though fully set forth in this Paragraph 517.

518.    The Graves Plaintiffs provided personal information to the DPS including

their addresses, color photographs, dates of birth, weight, height and eye color for the

purpose of acquiring and utilizing a State of Minnesota driver's license.

519.    The DPS also maintained a driving record for each of the Graves Plaintiffs.

520.    None of the Graves Plaintiffs provided consent for any of the Defendants to

obtain, disclose or use their private information for anything but official law-enforcement

business.

521.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

522.    The DPPA provides redress for violations of a person's protected interest in the privacy of his or her motor vehicle records and the indentifying information therein.

523.    Certain Defendants have violated the Graves Plaintiffs legally protected interests under the DPPA.

524.    The attached Exhibit A is a table based on information from DPS audits showing the certain Defendants and when the unauthorized accesses – pings – occurred. The certain Defendants identified on Exhibit A who unlawfully accessed the Graves Plaintiffs' private data include:  Wabasha County; City of Wabasha; Olmsted County; Department of Human Services; Minnesota State Patrol; City of Rochester; City of White Bear Lake; City of Staples.

525.    The Defendants, inclusive of supervisors and employees, knowingly disclosed the private personal information from the Graves Plaintiffs' drivers licenses for purposes not permitted under the DPPA.

526.    According to the Department of Vehicle Services, the Defendants who are individuals knowingly obtained, disclosed or used the Graves Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

527.    None of the individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Graves Plaintiffs' private information.

528.    By the actions describe above, each individual Defendant was acting within the scope of his or her employment when he or she obtained, disclosed or used the Graves Plaintiffs' personal information from the DVS Database fro an impermissible purpose.

529.    Individual Defendants knew that their actions relating to Graves Plaintiffs' Private Data were in violation of the DPPA.

530.    Defendants who are entities, supervisors, commissioners and John and Jane Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Graves Plaintiffs' private information by individual Defendants.

531.    The Defendants' actions, particularly those of the DPS Commissioner, constitute knowing disclosure of the personal information of Graves Plaintiffs under the DPPA.

532.    The action alleged herein show that the DPS Commissioner knowingly disclosed the information granting the individual Defendants access, violating the DPPA, even if the Commissioner did not know the individual Defendants accessed an obtained the information for an impermissible purpose.

533.    Individual Defendants knowingly used Defendant entities' computers, passwords and passcodes to access Graves Plaintiffs' private information.

534.    The sheer volume of personnel that obtained, disclosed or used Graves Plaintiffs' private information makes apparent that the Defendants' use was not permissible.

535.    Defendant entities are each vicariously liable for the acts of individual defendants.

536.    Individual Defendants used the Defendant entities' computers, passwords and passcodes to obtain the Graves Plaintiffs' private information.

537.    By the actions complained of, the DPS Commissioner and DPS Does are jointly liable for the acts of individual Defendants.

538.    The Graves Plaintiffs have suffered harm because their private information has been obtained and viewed unlawfully.

539.    The Graves Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

540.    The Graves Plaintiffs have suffered harm because their private information has been obtained unlawfully.  The Graves Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of the individual Defendants who obtained it without a legitimate purpose.

541.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

542.    Each of the certain Defendants listed in Exhibit A has willfully and recklessly disregarded the law, entitling Graves Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  The Graves Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other

litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

543.    In addition, under the DPPA, Graves Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of DPPA.  18 U.S.C. § 2721(b)(1).  The Graves Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT X

**All Plaintiffs  – 42 U.S.C. § 1983 Violations Against Individual Defendants**

544.    All Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 543 as though fully set forth in this Paragraph 544.

545.    The Fourth Amendment to the Constitution of the United States provides for the right of individuals "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures."

546.    The Fourth Amendment to the Constitution of the United States establishes a well-settled civil right to be free from an unconstitutional search.

547.    At no time relevant to this Complaint, did the Plaintiffs behave in a manner that would provide any legal justification for the above-described invasions of privacy.

548.    The DPPA establishes that obtaining an individual's Private Data without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment.

549.    The DPPA, among other things, such as the plain language of the Constitution, the various court decisions interpreting the Constitution, and the traditions

of our country establish that an individual has a reasonable expectation of privacy in their driver's license information.

550. Individual Defendants' viewing of Plaintiffs' personal information was unauthorized, unjustified, and excessive, and violates the Fourth Amendment, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

551. By the actions described above, each individual Defendant, acting under color of state and federal law, violated and deprived the Plaintiffs of their federal rights under the Fourth Amendment and DPPA.

552. The acts of each law enforcement personnel and other official, acting under the color of state and federal law, constituted an invasion or repeated invasions of Plaintiffs' clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

553. The DPPA protects and codifies an individual right to privacy in a person's Private Data, thereby prohibiting unauthorized accessing of all persons' information, including Plaintiffs' information.

554. Each of the law-enforcement personnel and other officials, acting under color of state and federal law, knew that his or her actions violated and deprived Plaintiffs of clearly established statutory rights under DPPA.

555. Each of the law-enforcement personnel and other officials deprived Plaintiffs of their federal statutory rights and civil rights maliciously and by acting with reckless regard for whether Plaintiffs' rights would be violated by his or her actions.

556.    Each individual Defendant was deliberately indifferent to Plaintiffs'
statutory and civil rights to be free from illegal searches, invasions of privacy and the
unauthorized accessing of Plaintiffs' private data.

557.    As a direct and proximate result of the acts and omissions of the above-
named individual Defendants, the Plaintiffs suffered mental suffering, and were damaged
in an amount yet to be determined, but believed to be well in excess of One Million
Dollars ($1,000,000).

558.    Punitive damages are available against individual Defendants for their
reckless and callous disregard for the Plaintiffs' rights and their intentional violations of
federal law, and are hereby claims as a matter of federal common law, Smith v. Wade,
461 U.S. 30 (1983), and as such, are not subject to the pleading requirement for punitive
damages set forth in Minn. Stat. § 549.20.

559.    Plaintiffs are entitled to recovery of their costs, including reasonable
attorney's fees under 42 U.S.C. § 1988.

## COUNT XI

### All Plaintiffs  – 42 U.S.C. § 1983 Violations Against Defendants Which Are Entities and/or Supervisors

560.    All Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through
559 as though fully set forth in this Paragraph 560.

561.    Individual Defendants' numerous accesses of Plaintiffs' private information
are not unique, but one example of how frequently such law-enforcement agencies

customarily violate the DPPA by accessing Private Data of persons without a legitimate or permissible reason for doing so.

562.   Persons familiar with police departments and those involved in teaching supervisors how to train and hold accountable their subordinate law-enforcement personnel have been told by those supervisors that the unlawful and impermissible accessing of private information is among the most frequently committed wrongs by law enforcement officers, for which they are seldom held accountable.

563.   The foregoing information, other information to be presented at trial, and evidence likely to be determined after full discovery, demonstrate that the improper access of citizens' Private Data by Defendants for their own personal, political and other uses, obtained by accessing that information through the computerized information storage system kept by the State for official purposes only, is an official custom or practice well known to the DPS Commissioner and the Defendants who are supervisors.

564.   These customs and practices by individual Defendants are at variance with the written rules set down by the Defendants which are entities and by the DPS Commissioner, but these formal rules are widely and knowingly disregarded.

565.   Given the Defendant entities' failure to monitor and enforce their own rules, the aforementioned customs and practices of the individual Defendants are attributable to the Defendant entities – cities, counties and state – and the Defendant supervisors.

566.   Defendant entities and Defendant supervisors of the law-enforcement personnel and other officials accessing this information, knew or should have known of

this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel.

567.   The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiffs, whose information has been wrongly accessed.

568.   Defendant entities are directly liable for the custom and practice of the widespread illegal access of citizens' Private Data.

569.   Defendant supervisors up to and including the chief police officers and sheriffs employed by each Entity Defendant, are liable in their individual capacity.

570.   Defendants' liability is due to their actual and constructive knowledge of this practice.

571.   Defendants' liability is also due to their failure to institute any process for monitoring and preventing it.

572.   Defendants' liability is also due to their deliberate indifference to the federal rights of those persons, including Plaintiffs, whose information has been and continues to be wrongly accessed.

573.   In addition, Defendant supervisors of the law-enforcement personnel and other public officials, up to and including the chief police officer and sheriffs of the Defendant entities, are liable in their individual capacities for the failure to train, monitor, supervise, and properly discipline the officers and others who are improperly and

unlawfully accessing the Private Data of citizens, including Plaintiffs, without a proper, lawful, permissible, justifiable purpose for doing so.

574.    The pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiffs.

575.    The federal rights of the citizens, including Plaintiffs, whose information is improperly accessed, are held in light regard by many if not most of the Defendant supervisors and by the Defendant entities themselves.

576.    Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access and to the impact of the unauthorized access on the federal rights of citizens, including Plaintiffs, who would often be unaware of that access.

577.    It is yet unknown whether a system has been established by the Defendant entities and Defendant supervisors who monitor the regular access of the DPS Databases by personnel.

578.    It is yet unknown whether any attempt has been made by Defendant entities and Defendant supervisors to provide redress and assurance to the persons, including Plaintiffs, whose DVS information has been wrongfully accessed by the individual Defendants.

579.    The actions of the Defendant entities and Defendant supervisors, as alleged, violate the rights of the Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

580.    As a direct and proximate result of the acts and omissions of the above-named Defendant entities and Defendant supervisors, the Plaintiffs have endured and continued to endure mental suffering, and have damaged in an amount yet to be determined and of a continuing nature, but believed to be well in excess of One Million Dollars ($1,000,000).

581.    Punitive damages are available against Defendant entities and Defendant supervisors for their reckless and callous disregard for the Plaintiffs' rights and their intentional violations of federal law, and are hereby claims as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

582.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT XII

**All Plaintiffs  – 42 U.S.C. § 1983 Violations Against DPS Commissioner and DPS Does**

583.    All Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 582 as though fully set forth in this Paragraph 583.

584.    As DPS Commissioner, Dohman, along with DPS Does, were and are responsible for creating, maintaining, and providing access to the database which included and includes Plaintiffs' private data.

585.    DPS Commissioner and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiffs' Private Data, and have the ongoing duty to prevent such unauthorized accesses.

586.    DPS Commissioner and DPS Does failed to prevent unauthorized access to the Database, including Plaintiffs' Private Data.

587.    The actions of the DPS Commissioner and DPS Does, as alleged, violate the rights of the Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

588.    On information and belief, DPS Commissioner and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to Private Data.

589.    From 2003, DPS Commissioner and DPS Does allowed unauthorized access of Plaintiffs' Private Data such that multiple personnel from multiple departments accessed Plaintiffs' data over 600 times.

590.    On information and belief, DPS Commissioner and DPS Does' efforts have been insufficient to prevent future unauthorized access of Plaintiffs' and other individuals' private, personal information.

591.   DPS Commissioner and DPS Does have sanctioned the constitutional violations by the individual Defendants through their failure to remedy the policy, custom and practice of officers and officials enjoying unfettered and unauthorized access to the DVS Database.

592.   DPS Commissioner and DPS Does have been grossly negligent in supervising subordinates responsible for implementing the law-enforcement database that prevents unauthorized access to private, personal information.

593.   On information and belief, DPS Commissioner and DPS Does have failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

594.   DPS Commissioner and DPS Does, acting under color of state and federal law, were deliberately indifferent to Plaintiffs' constitutionally-recognized rights and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of the Plaintiffs' Private Data.

595.   DPS Commissioner and DPS Does have failed to implement properly Minnesota's policy to protect the private, personal information of its citizens with driver licenses.

596.   As a direct and proximate result of the acts and omissions of the DPS Commissioner and DPS Does, the Plaintiffs have endured and continued to endure mental suffering, and have damaged in an amount yet to be determined and of a continuing nature, but believed to be well in excess of One Million Dollars ($1,000,000).

597.    Punitive damages are available against DPS Commissioner and DPS Does for their reckless and callous disregard for the Plaintiffs' rights and their intentional violations of federal law, and are hereby claims as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

598.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT XIII

### All Plaintiffs  – Prospective Relief Against DPS Commissioner and DPS Does

599.    All Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 598 as though fully set forth in this Paragraph 599.

600.    Defendants' misconduct reflects a custom, practice and/or policy of sanctioning, permitting, encouraging, provoking, and/or allowing invasions of citizens' DPPA privacy rights that operated throughout DPS, all in violation of state policy to protect its citizens' Private Data and all in violation of the DPPA and constitutionally-guaranteed privacy protections.

601.    The acts and omissions of the DPS Commissioner were the direct cause of the custom or policy permitting violations of citizens' DPPA privacy rights that operated through DPS.

602.    Not only were the violation of privacy rights tolerated, but the persons who were in charge of overseeing compliance with the DPPA instead obstructed the efforts of persons who sought audits or other information regarding the violations, again in

violation of state policy requiring the enforcement of DPPA and requiring openness and transparency in government, and guaranteeing the rights of citizens to information about such violations.

603.    The lack of monitoring regarding records acquisition practices and the failure to take action to stop or prevent these practices demonstrate the state of mind of the DPS Commissioner.

604.    These customs and practices further demonstrate the DPS Commissioner's deliberate indifference to the federal statutory and constitutional rights of citizens, including Plaintiffs, whose information was unlawfully obtained, used, collected, stored, disclosed and disseminated.

605.    As a direct and proximate result of the acts and omissions of the DPS Commissioner, prospective injunctive relief is warranted permanently enjoining the DPS Commissioner from allowing the unfettered and unauthorized access by its employees to view private information in violation of federal law and further requiring her and/or her successors to set in place policies, procedures and/or practices prohibiting the unlawsul accessing viewing, collecting, storing, disclosing and disseminating of private data in the future, as well as a mechanism to audit or monitor compliance with these procedures.

606.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT XIV

**All Plaintiffs – Common Law Invasion of Privacy Against All Defendants**

607.    All Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 606 as though fully set forth in this Paragraph 607.

608.    By improperly obtaining Plaintiffs' private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude and seclusion of Plaintiffs; private affairs and concerns.

609.    Defendants' intrusions would be highly offensive to a reasonable person.

610.    Defendants' intrusions caused the Plaintiffs severe emotional distress.

611.    Defendants' intrusions were intended to cause Plaintiffs' severe emotional distress, and were made with either actual or legal malice, or with reckless disregard of their rights and their privacy.

612.    Plaintiffs are entitled to tort damages for Defendants' invasions of privacy.

### DEMAND FOR JURY TRIAL

613.    Plaintiffs demand a jury trial.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully prays for judgment from the Court as follows:

1.    A declaratory judgment against certain Defendants in favor of each Plaintiff stating that the Defendants are liable for violations of the DPPA and are liable for common law invasion of privacy;

2.      A money judgment against certain Defendants in favor of each Plaintiff for liquidated, nominal, actual and compensatory damages in a total amount in excess of One Million Dollars ($1,000,000) and punitive damages in an amount to be determined by the jury, together with their costs, including reasonable attorney's fees under 42 U.S.C. § 1988, and other applicable laws and pre-judgment interest;

3.      Actual damages, punitive damages, attorney's fees and other litigation costs and such other preliminary and equitable relief as the Court determines to be appropriate under the DPPA, 18 U.S.C. § 2724(b);

4.      Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

5.      An injunction, permanently enjoining all Defendants from viewing Plaintiffs' private information in violation of the DPPA, unless necessary for law-enforcement purposes;

6.      An injunction, permanently and prospectively requiring the DPS Commissioner and any successor to establish and implement all effective monitoring and investigative procedures to end this practice, discover and suspend permanently all accessing privileges to the violators, and to provide full disclosure to all persons who have had their privacy rights violated under the DPPA and the Constitution.

For such other and further relief as Court deems to be just and equitable.


                                                    MOHRMAN & KAARDAL, P.A.


Dated:  September 12, 2013                            s/Erick G. Kaardal
                                                    Erick G. Kaardal, 229647
                                                    William F. Mohrman, 168816
                                                    33 South Sixth Street, Suite 4100
                                                    Minneapolis, Minnesota 55402
                                                    Telephone: 612-341-1074

                                                    *Attorneys for Plaintiffs*

**VERIFICATION**

I, Debra Roschen, as a citizen of the State of Minnesota, have read the foregoing allegations of the Complaint for the claims asserted and declare under the penalty of perjury and under the laws of this State and of the United States that the foregoing is true to the best of my knowledge and belief.

Dated:  September 11, 2013


  /s/Debra Roschen
Debra Roschen

**RULE 38 DEMAND FOR JURY TRIAL**

By the undersigned, the above-named Plaintiffs demand, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury of all issues so triable.

MOHRMAN & KAARDAL, P.A.

Dated:  September 12, 2013

 s/Erick G. Kaardal
Erick G. Kaardal, 229647
William F. Mohrman, 168816
33 South Sixth Street, Suite 4100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074

*Attorneys for Plaintiffs*