**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

James Roschen, Megan Roschen,
Laura Drazkowski, Kinsey Drazkowski,
David Harms, Beverly Snow, Jerry
Snow, Jerry Gelao, John Adams,
Donna Adams, Virginia Kautz, Julie
Porcher, Marlin Graves, Karen Graves,
Debra Roschen, Steve Drazkowski, C.
Merl Norman, and Anna Mae Norman,

        Plaintiffs,

    v.

                                               **MEMORANDUM OPINION**
                                             **AND ORDER**
                                           Civil No. 13-2490 ADM/SER

Wabasha County, Anoka County, Anoka
County Community Corrections, Benton
County, Blue Earth County, Blue Earth
County Community Corrections, Josh
Milow, Director of Blue Earth County Community
Corrections, in his individual and official capacity,
Chisago County, Dakota County, Dodge County,
Douglas County, Faribault County, Goodhue
County, Hennepin County, Jackson County, Lake
County, Martin County, Mille Lacs County, Nicollet
County, Olmsted County, Ottertail County, Ramsey
County, Renville County, St. Louis County,
Scott County, Steele County, Washington
County, Winona County, Wright County, Mona
Dohman, acting in her individual and official capacity
as Commissioner of Public Safety, Lori Swanson,
in her individual capacity and official capacity as
Attorney General of Minnesota, Colonel Kevin Daly,
in his individual capacity and official capacity as Chief
of State Patrol of Minnesota, Lucinda Jesson, in her
individual and official capacity as Commissioner of
Minnesota Department of Human Services, Tom Roy,
in his individual capacity and official capacity as
Commissioner of Minnesota Department of Corrections,
City of Austin, City of Cannon Falls, City of Chaska,
City of Cloquet, City of Duluth, City of Eagan, City of
Fairmont, City of Hastings, City of Lake City, Lakes
Area Police Department, City of Medina, City of
Minneapolis, City of Minnetonka, City of Oakdale,

City of Park Rapids, City of Plainview, City of
Prior Lake, City of Red Wing, City of Richfield,
City of Rochester, City of Rosemount, City of
Roseville, City of Sartell, City of St. Cloud, City of
St. Paul, City of Staples, City of Stillwater, City of
Wabasha, City of Waterville, City of Wells, City of
White Bear Lake, City of Winona, Fond du Lac
Police Department, Metro Transit Police
Department, John and Jane Does (1-1000) acting in
their individual capacity as supervisors, officers,
deputies, staff, investigators, employees or agents of
law enforcement agencies sited in Minnesota,
Department of Public Safety Does (1-30) acting in
their individual capacity as officers, supervisors, staff,
employees, independent contractors or agents of the
Minnesota Department of Public Safety, Entity Does (1-50)
including cities, counties, municipalities, district courts,
court services, and other entities sited in Minnesota, Jeff
Shorba in his individual capacity and official capacity as
State Court Administrator, City of Deerwood, City of
Goodview, City of Kasson, City of Kenyon, and City of
Mantorville,

        Defendants.

---

William F. Mohrman, Esq., James V.F. Dickey, Esq., and Erick G. Kaardal, Esq., Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Jessica E. Schwie, Esq., Jamie L. Guderian, Esq., and Joseph E. Flynn, Esq., Jardine Logan & O'Brien PLLP, Lake Elmo, MN, on behalf of Defendants Wabasha County, Benton County, Blue Earth County, Blue Earth County Community Corrections, Josh Milow, Chisago County, Dodge County, Douglas County, Faribault County, Goodhue County, Jackson County, Lake County, Martin County, Mille Lacs County, Nicollet County, Ottertail County, Renville County, Scott County, Steele County, Wabasha County, Washington County, Winona County, and Wright County.

Bryan D. Frantz, Esq., Anoka County Attorney's Office, Anoka, MN, on behalf of Defendants Anoka County, and Anoka County Community Corrections.

Amelia N. Jadoo, Esq., and Helen R. Brosnahan, Esq., Dakota County Attorney's Office, Hastings, MN, on behalf of Defendant Dakota County.

Toni A. Beitz, Esq., Beth A. Stack, Esq., and Daniel D. Kaczor, Esq., Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Defendant Hennepin County.

Gregory J. Griffiths, Esq., Dunlap & Seeger, Rochester, MN, on behalf of Defendant Olmsted County.

Kimberly R. Parker, Esq., and Robert B. Roche, Esq., Ramsey County Attorney's Office, St. Paul, MN, on behalf of Defendant Ramsey County.

Nick D. Campanario, Esq., St. Louis County Attorney's Office, Duluth, MN, on behalf of Defendant Duluth County.

Katherine M. Swenson, Esq., John M. Baker, Esq., and Clifford M. Greene, Esq., Greene Espel PLLP, Minneapolis, MN, on behalf of Defendants City of Austin, City of Cannon Falls, City of Chaska, City of Cloquet, City of Eagan, City of Fairmont, City of Hastings, City of Lake City, Lakes Area Police Department, City of Medina, City of Minnetonka, City of Oakdale, City of Park Rapids, City of Plainview, City of Prior Lake, City of Red Wing, City of Richfield, City of Rochester, City of Rosemount, City of Roseville, City of Sartell, City of St. Cloud, City of Staples, City of Stillwater, City of Wabasha, City of Waterville, City of Wells, City of White Bear Lake, City of Winona, City of Deerwood, City of Goodview, City of Kasson, City of Kenyon, and City of Mantorville.

Nathan N. LaCoursiere, Esq., and M. Alison Lutterman, Esq., Duluth City Attorney's Office, on behalf of Defendant City of Duluth.

Gregory P. Sautter, Esq., Office of the City Attorney, Minneapolis, MN, on behalf of Defendant City of Minneapolis.

Kara M. Kisch, Esq., Office of the St. Paul Attorney, St. Paul, MN, on behalf of Defendant City of St. Paul.

Richard M. Dahl, Esq., and Brandi F. Erwin, Esq., Madigan, Dahl & Harlan, P.A., Minneapolis, MN, on behalf of Defendant Fond du Lac Police Department.

Daniel L. Abelson, Esq., Metropolitan Council, St. Paul, MN, on behalf of Defendant Metro Transit Police Department.

_____

## I.  INTRODUCTION

Before the Court are Defendants' motions to dismiss and/or to sever [Docket Nos. 37

(Ramsey County), 41 (Anoka County, Anoka County Community Corrections), 43 (Dakota

County), 44 (Hennepin County), 47 (City of Duluth), 50 (City of St. Paul), 56 (City of

Minneapolis), 69 (Fond du Lac Police Department), 73 (Olmsted County), 76 (City of Austin,

City of Cannon Falls, City of Chaska, City of Cloquet, City of Deerwood, City of Eagan, City of

Fairmont, City of Goodview, City of Hastings, City of Kasson, City of Kenyon, City of Lake

City, Lakes Area Police Department, City of Mantorville, City of Medina, City of Minnetonka,

City of Oakdale, City of Park Rapids, City of Plainview, City of Prior Lake, City of Red Wing,

City of Richfield, City of Rochester, City of Rosemount, City of Roseville, City of Sartell, City

of St. Cloud, City of Staples, City of Stillwater, City of Wabasha, City of Waterville, City of

White Bear Lake, City of Winona), 82 (Anoka County), 90 (Benton County, Blue Earth County,

Blue Earth County Community Corrections, Chisago County, Faribault County, Goodhue

County, Jackson County, Lake County, Martin County, Josh Milow, Nicollet County, Ottertail

County, Renville County, Scott County, Steele County, Wabasha County, Washington County,

Winona County, Wright County), 94 (Metro Transit Police Department)].  Plaintiffs oppose all

of the above motions.  For the reasons stated herein, Defendants' motions are granted.

## II. BACKGROUND

The Driver and Vehicle Services Division of the Minnesota Department of Public Safety

("DPS") maintains a password protected database of Minnesota drivers' motor vehicle records

("DVS database"), which includes each licensed driver's name, date of birth, driver's license

number, address, photograph, weight, height, eye color, social security number, and some limited

health and disability information. Am. Compl. [Docket No. 29] ¶ 106.  Law enforcement

personnel have access to the DVS Database through either a DVS website or a system operated

by the Bureau of Criminal Apprehension.  Each law enforcement employee is issued a password

allowing access to the DVS database.  Id. ¶ 219.

In 2013, Plaintiffs requested and received an audit report prepared by the DPS.  The report shows that law enforcement employees viewed Plaintiffs' driver's license information at various times and from various locations from 2003-2013.  Id. ¶ 184.  "Upon information and belief," Plaintiffs allege each of these views, or "look-ups," was illegal, that is, viewed without a federally-permitted purpose.  Id. ¶¶ 89-90.  Plaintiffs identify themselves as a group of "politically active" members, who "spoke out on community and [Wabasha] county affairs."[1]  Id. ¶ 87.

The Amended Complaint does not allege specific facts about the roles of individual Plaintiffs in the group, where the group is located, or the nexus between the group and its members.  Instead, Plaintiffs allege the "group consists of generally concerned people who politically participate together in Wabasha County government."  Id. ¶ 92.  The Amended Complaint also states Plaintiffs, as a group, encourage members to speak out on issues, write and publish materials, and attend county board meetings.  Some members of the group have also won and lost elections.  The Amended Complaint includes a Plaintiff, State Representative Steve Drazkowski, who campaigned for office in 2006-2008, 2010, and 2012.  Id. ¶95.  Plaintiff Commissioner Deb Roschen won a Wabasha County Board seat in 2010; Commissioner David Harms won a county board seat in 2010; and, Merl Norman won a county board seat in 2008, but lost his re-election bid in 2012.  Id. ¶¶ 96-98.  It is also alleged that members of "the group" have participated in litigation in state court: first, some of the Plaintiffs sued Wabasha County for improper organization of a Wabasha County Study Commission, and second, some of the

---

[1] As discussed below, all facts alleged in the Amended Complaint are taken as true.

Plaintiffs sued Wabasha County Sheriff's Office in 2013 for operating an unauthorized drivers' safety school.[2]

Plaintiffs name as defendants 26 counties, 36 cities, 3 police departments, and 7 individuals acting in their individual and official capacities.  Plaintiffs also name many unknown John and Jane Does (1-1000), Minnesota Department of Public Safety Does (1-30), and Entity Does (1-50) including cities, counties, municipalities, district courts, court services, and other entities sited in Minnesota.  The eighteen Plaintiffs claim Defendants collectively and individually accessed Plaintiffs' private data 600 times from April 18, 2003 through the filing of the Complaint on September 12, 2013.  Compl. [Docket No. 1] Ex. A.  Plaintiffs speculate these look-ups were caused by their participation in politics critical of Wabasha County.  Id. ¶ 102.  Plaintiffs claim the "sheer volume" of accesses revealed by the DVS audit show these look-ups are violations of federal law.  Id. ¶¶ 249, 273, 297, 321, 345, 369, 393, 417, 441, 465.[3]  All Plaintiffs also bring a common law invasion of privacy claim against all Defendants.  Id. ¶¶ 473-77 (Count XI).

---

[2] The individual Plaintiffs who participated in these suits are not identified.

[3] Plaintiffs divide the counts by family: Count I consisting of Debra Roschen, her husband James Roschen, and their daughter Megan Roschen (the "Roschen Plaintiffs");  Count II consisting of Steve Drazkowski, his wife Laura Drazkowski, and their daughter Kinsey Drazkowski (the "Drazkowski Plaintiffs"); Count III consisting of David Harms; Count IV consisting of C. Merl Norman and his wife Anna Mae Norman (the "Norman Plaintiffs"); Count V consisting of Beverly and Jerry Snow, (the "Snow Plaintiffs"); Count VI consisting of Jerry Gelao; Count VII consisting of John and Donna Adams (the "Adams Plaintiffs"); Count VIII consisting of Virginia Kautz; Count IX consisting of Julie Porcher; and, Count X consisting of Marlin and Karen Graves (the "Graves Plaintiffs").

# III. DISCUSSION

## A. DPPA

This case is one of many very similar cases brought in this jurisdiction under the Federal

Driver's Privacy Protection Act ("DPPA").[4]  The DPPA prohibits "any person" from "knowingly

. . . obtain[ing] or disclos[ing] personal information, from a motor vehicle record, for any use not

permitted under Section 2721(b) of this title."  18 U.S.C. § 2722.  As defined by the Act,

"personal information" means basic identification information including name, photograph,

address, social security number, and driver's license number.  See id. § 2725(3).  The Act lists

numerous permitted uses, including "use by any government agency, including any court or law

enforcement agency, in carrying out its functions . . . ."  Id. § 2721(b)(1).  The circuit courts

which have addressed the issue of burden of proof have held the plaintiff has the burden of

proving each element of the civil claim, including whether the retrieval was for a "purpose not

permitted" by the Act.  See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, &

Stevens, P.A., 525 F.3d 1107, 1110-14 (11th Cir. 2008); Maracich v. Spears, 675 F.3d 281, 299-

300 (4th Cir. 2012); Howard v. Criminal Info. Servs., Inc., 654 F.3d 887, 890-91 (9th Cir. 2011).

## B. Statute of Limitations

As an initial matter, DPPA claims are subject to a four-year statute of limitations.  28

---

[4] There are at least 28 such cases in the United States District Court of Minnesota, many of which have been dismissed, either in whole or in part.  See Ray v. Anoka Cnty., No. 14-539, 2014 U.S. Dist. LEXIS 75792 (D. Minn. June 3, 2014) (Magnuson, J.) (listing cases); Potocnik v. Carlson, No. 13-2093, 2014 U.S. Dist. LEXIS 38018 (D. Minn. Mar. 24, 2014) (Schiltz, J.); Smythe v. City of Onamia, No. 12-3149, 2013 U.S. Dist. LEXIS 78948 (D. Minn. June 5, 2013). As Judge Magnuson aptly noted in Ray, there is little purpose in offering an "affectation of research and a pretense of authorship and originality."  Instead, the Court will concentrate on the facts which Plaintiffs claim make this case unique.  See Ray, 2014 U.S. Dist. LEXIS 75792, at *7-8.

U.S.C. § 1658(a). Defendants argue that since Plaintiffs filed their Complaint on September 12, 2013, the statute of limitations bars claims made against look-ups occurring before September 12, 2009. Plaintiffs argue that pre-September 12, 2009 claims are not barred because the discovery rule applies, and the Plaintiffs did not learn of the alleged look-ups until they obtained the audit report in 2013.

The Court finds Judge Patrick J. Schiltz's analysis in Potocnik, 2014 U.S. Dist. Lexis 38018, at *22-34, to be persuasive. Under the discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation." Comcast of Ill. X v. Multi-Vision Elecs., Inc., 491 F.3d 938, 944 (8th Cir. 2007). Thus, Plaintiffs argue that the statute of limitations did not begin to run on their DPPA claims until they learned that their information had been viewed by the Defendants. Under the occurrence rule, the cause of action accrues and the statute of limitations begins to run when the injury occurs. Gabelli v. Sec. & Exch. Comm'n, 133 S. Ct. 1216, 1220 (2013). Judge Schiltz described the choice between the discovery rule and the occurrence rule as a difficult question. Potocnik, 2014 U.S. Dist. Lexis 38018, at *23. But, in reviewing the case law, Judge Schiltz persuasively argues, the occurrence rule is "standard" and the discovery rule is an "exception." Id. (citing Gabelli, 133 S. Ct. at 1220-21). Since the discovery rule is the exception, the Court should determine "whether anything about a DPPA claim would justify application of the discovery rule." Id. at *30. In the final analysis,

> Undoubtedly, application of the occurrence rule will cause some people to lose valid claims about which they had no reason to be aware. But application of the discovery rule would indefinitely extend the limitations period for plaintiffs who suffer no actual damages while doing little or nothing to help plaintiffs who suffer precisely the kind of harm that prompted passage of the DPPA. The Court believes it far more likely that Congress intended the former, rather than the latter, of these two imperfect

> scenarios.  See Rotella v. Wood, 528 U.S. 549, 554 (2000) (rejecting a discovery rule
> that "might have extended the limitations period to many decades, and so beyond any
> limit that Congress could have contemplated" because "[p]reserving a right of action
> for such a vast stretch of time would have thwarted the basic objective of repose
> underlying the very notion of a limitations period").

Id. at *33.  As a result, claims based on look-ups occurring before September 12, 2009, are time-barred.  Therefore, there are no timely claims brought against the Counties of Benton, Blue Earth, Dodge, Jackson, Martin, Mille Lacs, Nicollet, Scott and Wright.  These counties are dismissed from this lawsuit without further analysis.  In addition, no timely claims have been brought against the Cities of Cannon Falls, Chaska, Cloquet, Deerwood, Eagan, Goodview, Hastings, Kasson, Kenyon, Mantorville, Minneapolis, Oakdale, Park Rapids, Prior Lake, Richfield, Roseville, Sartell, St. Cloud, Staples, Stillwater, and Waterville.  These cities are similarly dismissed

## C.  Remaining DPPA Claims

The remaining searches since September 12, 2009, allegedly made by Defendants are summarized as follows:

Anna Mae Norman's information was looked up by the Anoka County Sheriff's Office twice*,[5] and by Wabasha County Sheriff's Office once, between March 2, 2010, and May 2, 2011.

Beverly Snow's information was looked up by an District Court User 3[6] three times, by

---

[5] Look-ups that include searches made by the same entity at the same time are given an asterisk because they are likely duplicates of a single look-up, but for purposes of this motion are considered as separate.

[6] Plaintiffs identify the District Court User stations as Minnesota State Court Administration accesses.

District Court User 6 once, Fairmont Police Department once, Faribault County Sheriff's Office once, Lake City Police Department twice, Le Sueur County Court Services once, Minnesota State Patrol three times*, Olmsted County Sheriff's Office twice, Wabasha County Sheriff's Office three times*, and the Wells Police Department once, between November 13, 2009, and March 9, 2013.

David Harms' information was looked up by Dakota County Sheriff's Office once, Douglas County Sheriff's Office once, Department of Human Services twice, Lake City Police Department three times, Minnesota State Patrol three times, Plainview Police Department once, Rochester Police Department twice, Rosemount Police Department once, St. Paul Police Department once, Wabasha County Sheriff's Office nine times, Wabasha Police Department nine times*, Washington County Sheriff's Office twice, and Winona County Sheriff's Office once, between December 22, 2009, and April 28, 2013.

Debra Roschen's information was looked up by Dakota County Sheriff's Office twice, Goodhue County Sheriff's Office once, Lake City Police Department three times, Minnesota State Patrol four times, Olmsted County Sheriff's Office once, Plainview Police Department once, Wabasha County Court Services seven times*, Wabasha County Sheriff's Office twelve times*, Wabasha Police Department five times*, Washington County Sheriff's Office twice*, and White Bear Lake Police Department once, between December 22, 2009, and April 24, 2013.

Donna Adams' information was looked up by Minnetonka Police Department once, and Rochester Deputy Registrar once, between May 10, 2011, and August 20, 2012.

Jerry Gelao's information was looked up by Olmsted County Sheriff's Office twice, Ottertail County Sheriff's Office once, Rochester Police Department twice, and Wabasha County

Sheriff's Office four times, between April 17, 2010, and February 21, 2013.[7]

Jerry Snow's information was looked up by District Courts User 6 four times, Fond du Lac Tribal Police Department once, Medina Police Department twice, Minnesota State Patrol once, Olmsted County Sheriff's Office twice, St. Louis County Sherriff's Office once, and Wabasha County Sheriff's Office seven times, between November 13, 2009, and July 25, 2013.

Jim Roschen's information was looked up by Dakota County Sheriff's Office twice, Minnesota State Patrol three times, Olmsted County Sheriff's Office once, Plainview Police Department once, Wabasha County Court Services three times*, Wabasha County Sheriff's Office twice, and White Bear Lake Police Department once, between December 22, 2009, and April 15, 2013.

John Adams' information was looked up by Anoka County Sheriff's Office once, Austin Police Department once, Hennepin County Sheriff's Office once, Metro Transit Police Department once, Rochester Deputy Registrar once, Wabasha County Sheriff's Office twice, and Wabasha Police Department once, between September 15, 2009, and March 13, 2013.

Julie Porcher's information was looked up by Wabasha County Sheriff's Office once, on January 30, 2013.

Karen Graves' information was looked up by Minnesota State Patrol once, Olmsted County Sheriff's Office once, and Wabasha County Sheriff's Office once, between September 26, 2009, and August 2, 2011.

Kinsey Drazkowski information was looked up by Wabasha County Court Services, once

---

[7] A City of Rochester computer station, which is in Olmsted County, recorded a look-up at the same time as a look-up on an Olmsted County computer station.

on October 29, 2010.

Laura Drazkowski's information was looked up by Goodhue County Sheriff's Office twice, Minnesota State Patrol twice, Wabasha City Attorney twice, and Wabasha County Sheriff's Office twice, between February 6, 2010, and July 5, 2011.

Marlin Graves' information was looked up by Department of Human Services once, Minnesota State Patrol twice, Olmsted County Sheriff's Office twice, Wabasha County Sheriff's Office twice, and White Bear Lake Police Department once, between September 26, 2009, and April 23, 2013.

Megan Roschen's information was looked up by Ramsey County Sheriff's Office once, on July 18, 2013.

Merl Norman's information was looked up by Anoka County Sheriff's Office three times*, Chisago County Sheriff's Office once, Duluth Police Department once, Goodhue County Sheriff's Office once, the Minnesota State Patrol three times, an entity simply identified as "Office" once, Olmsted County Sheriff's Office three times, Rochester Police Department once,[8] Steele County Sheriff's Office once, and Wabasha County Sheriff's Office eleven times*, between November 6, 2009, and August 14, 2013.

Steve Drazkowski's information was looked up by Department of Human Services once, Lake City Police Department once, Lake County Sheriff's Office once, Minnesota State Patrol eight times*, Olmsted County Sheriff's Office four times, Red Wing Police Department twice, Renville County Sheriff's Office once, Rochester Police Department twice,[9] St. Paul Police

---

[8] See fn. 7.

[9] See fn. 7.

Department twice, Wabasha County Court Services twice, Wabasha County Sheriff's Office five times, Winona County Sheriff's Office once, and Winona Police Department, once between September 20, 2009, and June 15 2013.

Virginia Kautz's information was looked up by Minnesota State Patrol once, Olmsted County Sheriff's Office three times, Rochester Police Department twice,[10] Wabasha County Court Services once, and Wabasha County Sheriff's Office twice, between September 20, 2009, and March 30, 2013.

**D.  Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  However, the factual allegations must "raise a right to relief above the speculative level," and push claims "across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In other words, the complaint must establish more than a "sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  In doing so, the court must draw reasonable inferences in the plaintiff's favor, but it need not make unreasonable inferences or accept unrealistic assertions.  See Brown v. Medtronic, Inc., 628 F.3d

---

[10] See fn. 7.

451, 461 (8th Cir. 2010).

**E.  DPPA and Law Enforcement Exception**

The DPPA's legislative history reflects a goal of preserving broad discretion for law enforcement agents to retrieve information in the course of their duties.  Congress enacted the DPPA as part of legislation designed to prevent stalking, harassment, and related crimes.  See Margan v. Niles, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) (citations omitted).  Essential to achieving this objective was the Act's law enforcement exception.  This exception "'provides law enforcement agencies with latitude in receiving and disseminating this personal information,' when it is done 'for the purpose of deterring or preventing crime or other legitimate law enforcement functions.'"  Senne v. Vill. of Palatine, Ill., 695 F.3d 597, 607-08 (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Thomas Harken)).  In short, the legislative history recognizes law enforcement's "legitimate need for information contained in state records and the authority to use that information to effectuate the purposes identified in the Act without fear of liability."  Id. at 608.

Even so, an officer who retrieves motor vehicle records has violated the DPPA unless he or she has done so for a permitted purpose, such as for a law enforcement function.  In other words, an officer may violate the DPPA if he retrieves motor vehicle records and does not misuse the information; simply retrieving records without a permitted purpose is a violation.  By way of illustration, a police officer might retrieve a celebrity's motor vehicle records out of curiosity to learn the celebrity's age or weight.  By doing so, the officer has accessed a motor vehicle record under § 2724(a), but has done so without one of the permitted purposes listed in § 2721(b).  As a result, this simple act of retrieval, without any further action, would violate the

DPPA.

The district courts thus must attempt to discern cases which allege plausible claims from cases where plaintiffs engage in farfetched speculation that does not rise to the level of plausibility.  For example, in Mallak v. Aitkin Cnty., No. 13-2119, 2014 U.S. Dist. LEXIS 43349, *28 (D. Minn. Mar. 31, 2014) (Frank, J.), the district court found plaintiff's allegations plausible where the plaintiff alleged: (1) look-ups "made by name, not license plate number;" (2) 190 record retrievals; (3) state reported misuse of databases by the defendants; (4) a plaintiff well-known by the defendants because of her work as an attorney in the community, especially in the counties with the greatest number of look-ups; and (5) searches for her information were conducted at three and four o'clock in the morning.  Id.; see also Smythe, 2013 U.S. Dist. LEXIS 78948 (finding a complaint plausible when plaintiff alleged a detailed, long, and contentious history of a personal relationship between himself and an individually-identified law enforcement officer).  On the other hand, Judge Frank acknowledged "access-volume alone is not enough," Mallak, 2014 U.S. Dist. LEXIS 43349, at *30.

Many DPPA cases have been dismissed where the plaintiff has not alleged a "connection or interaction between an identifiable law enforcement officer and the plaintiff, from which the asserted impropriety of the officer's retrieval of the plaintiff's data can be plausibly inferred." Ray, 2014 U.S. Dist. LEXIS 75792, at *13.  "The timing of acquisitions is irrelevant," the court reasoned, "because police work is not confined to a typical workday."  Id.  In Ray, the plaintiff contended that her allegations were adequate to survive a motion to dismiss because she alleged a personal connection with defendants.  Id.  The plaintiff stated that her ex-husband was a retired law enforcement officer and he had friends in law enforcement.  But the plaintiff made no effort

to specifically link her ex-husband and his friends to the underlying alleged DPPA violations.

Id.; see also Potocnik v. Anoka Cnty., No. 13-1103, 2014 U.S. Dist. LEXIS 21845 (D. Minn.

Feb. 21, 2014) (Doty, J.) (dismissing complaint where the plaintiff "asks the court to speculate

and conclude—solely from the number of times defendants allegedly accessed the record—that

the purposes of law enforcement personnel were impermissible"); Bass v. Anoka Cnty., No. 13-

860, 2014 U.S. Dist. LEXIS 21846 (D. Minn. Feb. 21, 2014) (Doty, J.) (same); Mitchell v.

Aitkin Cnty., No. 13-2167, 2014 U.S. Dist. LEXIS 27089 (D. Minn. Mar. 4, 2014) (Ericksen, J.)

(dismissing claims based on the plaintiff's status as a television personality, with its attendant

publicity, because status does not address the fundamental question in DPPA cases: "the

impropriety of the data retrieval by each individual officer.")

In this case, eighteen plaintiffs ask the court to infer (1) that they are a "group," and (2)

that unknown law enforcement personnel in 26 counties and 36 cities targeted them as

individuals with impermissible look-ups because they were part of this group, a case of political

victimization by association.[11]  The Complaint does not support such an inference.

Addressing the set of Plaintiffs, they have not alleged facts from which the court can

infer that they actually are a group and were targeted as such.  Plaintiffs generally allege they are

concerned citizens, who are politically active and spoke out on community and Wabasha County

affairs.  This general description provides no distinguishing characteristics from the politically-

active populace.  The Amended Complaint offers no description of who is part of the group,

when or even if the individuals met as a group, how they operate as a group, or what unites them

---

[11] According to Exhibit A, there are approximately 235 look-ups that are not time barred, with dates between September 15, 2009, and August 14, 2013.   There are no allegations that the use of this data impaired or injured Plaintiffs before they discovered the audit in 2013.

beyond a shared desire to litigate.  The Amended Complaint also fails to allege facts supporting

an inference that the Defendants viewed Plaintiffs as a group.  The Amended Complaint

mentions two state civil cases, in which unnamed Plaintiffs participated, and then mentions years

when four Plaintiffs (State Representative Steve Drazkowski, Wabasha County Commissioner

Deb Roschen, Wabasha County Commissioner David Harms, and Wabasha County

Commissioner Merl Norman) sought election and re-election to political office.  That is all.

Plaintiffs make no attempt to allege a correlation to improper look-ups beyond look-ups

occurring in the same year as lawsuits and election campaigns.  This fails to distinguish Plaintiffs

as a group separate from any other politically active citizen whose information was accessed in

any given year.  Therefore, Plaintiffs' claims cannot be addressed as a group.

A comparison to <u>Mallak</u> is helpful in addressing the individual claims and counts.  As in

<u>Mallak</u>, Plaintiffs have alleged state reported misuse of databases by Defendants, as well as

asserting that some of the Plaintiffs could be known by Defendants because of their political

work in the community.  Unlike in <u>Mallak</u>, Plaintiffs make no allegations as to the time of day

when the searches for their information were conducted.  And, Plaintiffs have not alleged the

look-ups were made by name and not license plate number.[13]  Even so, each Plaintiff alleges the

"sheer volume" of look-ups is sufficient to make a claim.  The Court disagrees.

For nine Plaintiffs, Beverly Snow (18 look-ups that are not time-barred), Jerry Snow

(18), Jerry Gelao (9), John Adams (8), Donna Adams (2), Julie Porcher (1), Karen Graves (3),

---

[13] Plaintiffs claim that they reviewed the "raw data" of their respective audit trails and "scrubbed" the list of any dates and times of look-ups that could have been done for a proper purpose, "such as being pulled over, renewing their driver license, or any other conceivable rational reason."  Pls.' Opp'n [Docket No. 122] 24.  However, this does not indicate whether these were name searches or license plate searches.

Marlin Graves (8), and Virginia Kautz (9), the Complaint offers no specific facts at all; they are not even  mentioned in the factual allegations section.  The Court is left to speculate about how Defendants would have even known about them beyond official business.  This Court agrees with the other decisions of this District, look-up volume alone cannot support an inference of improper purpose.

For five Plaintiffs, Anna Mae Norman (3 look-ups), Jim Roschen (13), Kinsey Drazkowski (1), Laura Drazkowski (8), and Megan Roschen (1), the only additional, specific fact alleged beyond the scant allegations alleged on behalf of all Plaintiffs, is that they are related by birth or marriage to elected officials.  No other facts are provided in the Complaint.  Status as a relative combined with the number of look-ups alleged does not lead to a plausible inference of improper purpose in this case.  See Mitchell, 2014 U.S. Dist. LEXIS 27089, at *22.

Four Plaintiffs are or were elected officials: David Harms (36 look-ups), Deb Roschen (39), Merl Norman (26), and Steve Drazkowski (31).  If these four Plaintiffs had pled additional factual details about the nexus between look-ups and their status, this might be a closer case.  Compare Mitchell, 2014 U.S. Dist. LEXIS 27089, at *22 with Mallak, 2014 U.S. Dist. LEXIS 43349, at *28.  Plaintiffs' status as elected officials combined with allegations of publicity surrounding debates about issues and campaigns, could support a claim, if the look-ups are alleged to be causally connected or motivated by the events.  Instead, the Amended Complaint simply alleges that these elected officials campaigned for and held office in the years between 2006 and 2012.  Such vague allegations do not suffice to support viable DPPA claims.  The allegations identifying the two civil cases against Wabasha County are similarly vague.  Plaintiffs offer no detail as to how Plaintiffs participated in these suits or how the dates of the

look-ups relate to these two cases.  In addition, Wabasha County is the only named entity in the facts section of the Amended Complaint, none of the other Defendant Cities or Counties are named in the Complaint as having anything to do with the campaigns or the civil cases.  For Wabasha County, there is no effort in the Amended Complaint, to connect the dates of the look-ups to particular events.  Campaigns and lawsuits last for years.  There are no facts alleged which would allow the Court to infer that the campaigns and lawsuits motivated an improper purpose behind the look-ups on the dates given in Exhibit A to the Complaint.

Given the paucity of facts in the Amended Complaint, Plaintiffs have not alleged facts sufficient to avoid dismissal.  Since the filing of Defendants' Motions to Dismiss, Plaintiffs have made more specific factual representations in their Memorandum in Opposition, and even further factual allegations in their oral argument.  At oral argument, Plaintiffs presented a chart with dates of certain Wabasha County events from January 2011 to February 2014.  The presentation also represented, for the first time, "clusters" of look-ups that they claim may reveal improper purpose.  Plaintiffs requested an opportunity to amend the Amended Complaint on the basis of these facts and arguments.  These arguments are not considered for the purposes of deciding these motions, as the allegations were not alleged in the Amended Complaint and were not embraced by the documents incorporated in the Amended Complaint.  The Court will however dismiss Defendants without prejudice for those Plaintiffs and Defendants referenced in these new documents.

Josh Milow is the Director of Director of Blue Earth County Community Corrections. Besides being named in the caption, and as Director in the Parties section of the Amended Complaint, ¶ 17, he is nowhere else mentioned, and no facts have been specifically alleged

against him. Thus, his motion to dismiss will be granted.

**F.  Invasion of Privacy**

Plaintiffs lastly allege a common-law invasion-of-privacy claim for intrusion upon seclusion.  Under Minnesota law, "[i]ntrusion upon seclusion occurs when one 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'"  Rasmusson v. Chisago Cnty., No. 12-632, 2014 U.S. Dist. LEXIS 3102, *9 (D. Minn. Jan. 10, 2014) (Nelson, J.) (quoting Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998)).  "The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy."  Id. (quoting Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001)).

Courts in this district have already determined in similar cases that obtaining motor vehicle records is insufficient to meet the "high threshold of offensiveness and expectation of privacy[.]"  Id.; see also Potocnik, 2014 U.S. Dist. LEXIS 38018, at *17-18; Bass, 2014 U.S. Dist. LEXIS 21846, at *7; McDonough v. Al's Auto Sales, Inc., No. 13-1889, 2014 U.S. Dist. LEXIS 21847, at *7 (D. Minn. Feb. 21, 2014); Mallak, 2014 U.S. Dist. LEXIS 43349, at *13-14. This Court agrees.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Ramsey County's Motion to Dismiss [Docket No. 37] is **GRANTED**;

2.    Ramsey County is **DISMISSED**;

3.      Anoka County and Anoka County Community Corrections' Motions to Dismiss [Docket Nos. 41 and 82] are **GRANTED**;

4.      Anoka County Community Corrections is **DISMISSED**; and Anoka County is **DISMISSED WITHOUT PREJUDICE**;

5.      Dakota County's Motion to Dismiss [Docket No. 43] is **GRANTED**,

6.      Dakota County is **DISMISSED WITHOUT PREJUDICE**;

7.      Hennepin County's Motion to Dismiss [Docket No. 44] is **GRANTED**;

8.      Hennepin County is **DISMISSED**;

9.      City of Duluth's Motion to Dismiss [Docket No. 47] is **GRANTED**;

10.     City of Duluth is **DISMISSED WITHOUT PREJUDICE**;

11.     City of St. Paul's Motion to Dismiss [Docket No. 50] is **GRANTED**;

12.     City of St. Paul is **DISMISSED WITHOUT PREJUDICE**;

13.     City of Minneapolis' Motion to Dismiss [Docket No. 56] is **GRANTED**;

14.     City of Minneapolis is **DISMISSED**;

15.     Fond du Lac Police Department's Motion to Dismiss [Docket No. 69] is **GRANTED**;

16.     Fond du Lac Police Department is **DISMISSED**;

17.     Olmsted County's Motion to Dismiss [Docket No. 73] is **GRANTED**;

18.     Olmsted County is **DISMISSED WITHOUT PREJUDICE**;

19.     The City of Austin, City of Cannon Falls, City of Chaska, City of Cloquet, City of Deerwood, City of Eagan, City of Fairmont, City of Goodview, City of Hastings, City of Kasson, City of Kenyon, City of Lake City, Lakes Area Police

Department, City of Mantorville, City of Medina, City of Minnetonka, City of Oakdale, City of Park Rapids, City of Plainview, City of Prior Lake, City of Red Wing, City of Richfield, City of Rochester, City of Rosemount, City of Roseville, City of Sartell, City of St. Cloud, City of Staples, City of Stillwater, City of Wabasha, City of Waterville, City of White Bear Lake, and City of Winona's Motion to Dismiss [Docket No. 76] is **GRANTED**;

20.     The City of Austin, City of Cannon Falls, City of Chaska, City of Cloquet, City of Deerwood, City of Eagan, City of Fairmont, City of Goodview, City of Hastings, City of Kasson, City of Kenyon, City of Mantorville, City of Medina, City of Minnetonka, City of Oakdale, City of Park Rapids, City of Prior Lake, City of Richfield, City of Roseville, City of Sartell, City of St. Cloud, City of Staples, City of Stillwater, and City of Waterville are **DISMISSED**;

21.     The City of Lake City, Lakes Area Police Department, City of Plainview, City of Red Wing, City of Rochester, City of Rosemount, City of Wabasha, City of White Bear Lake, and City of Winona are **DISMISSED WITHOUT PREJUDICE**;

22.     Benton County, Blue Earth County, Blue Earth County Community Corrections, Chisago County, Faribault County, Goodhue County, Jackson County, Lake County, Martin County, Josh Milow, Nicollet County, Ottertail County, Renville County, Scott County, Steele County, Wabasha County, Washington County, Winona County, Wright County's Motion to Dismiss [Docket No. 90] is **GRANTED**;

23.     Benton County, Blue Earth County, Blue Earth County Community Corrections,

Faribault County, Jackson County, Martin County, Josh Milow, Nicollet County, Ottertail County, Renville County, Scott County, Wright County are **DISMISSED**;

24.     Chisago County, Goodhue County, Lake County, Steele County, Wabasha County, Washington County, Winona County are **DISMISSED WITHOUT PREJUDICE**;

25.     Metro Transit Police Department's Motion to Dismiss [Docket No. 94] is **GRANTED**; and,

26.     Metro Transit Police Department is **DISMISSED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 26, 2014.